**E. GERLI & CO., Inc., v. CUNARD S. S. CO. Limited.**

**No. 263.**

Circuit Court of Appeals, Second Circuit.
March 3, 1931.

Bigham, Englar, Jones & Houston, of New York City (Oscar R. Houston and Ezra G. Benedict Fox, both of New York City, of counsel), for appellant.

Lord, Day & Lord, of New York City (George De Forest Lord, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

An Italian exporter delivered to the respondent ninety-two bales of silk at Milan for shipment to New York, and took a bill of lading which contained the following clause: "The carrier is not to be liable  *  *  *  for any claim for short delivery of, or damage to,

the property hereby receipted for, unless notice of such claim is given in writing before the removal of the Goods or such part of the Goods as are discharged from the vessel at the port of discharge." The goods went by land to Havre, thence by water to Southampton, where the respondent laded them on the "Berengaria," bound for New York. The exporter endorsed and posted the bill to the libellant, who called for the goods which had been discharged on the wharf. Thirty-eight bales were delivered to him on December sixteenth; fifty-one on December seventeenth; one on December twenty-second; ninety in all. Nothing certain appears in the record as to his knowledge on or before December twenty-second that the other two bales had been lost; but on December twenty-fourth he made written claim for them, which the respondent later recognized as valid to the extent of the value agreed in the bill of lading. In January and February it was still searching for missing goods, and suggested that they might have been reshipped on the Berengaria in the confusion, or sent by mistake to the Government Stores.

The libellant sued for the loss, and the respondent pleaded the clause as a defense; also a clause in limitation of liability which it is unnecessary to set forth at length. The District Judge thought that the libellant had failed to give seasonable notice, and dismissed the libel.

■■ The language applicable to the loss of part of a consignment is this: "Before the removal of * * * such part of the Goods as are discharged from the vessel at the port of discharge." Taken literally, this would mean, in case all the goods were discharged from the vessel, and some were later lost on the pier, that the notice need never be given, because all those discharged were never removed; and the clause would then cover only the case of goods lost on board. Since it is ordinarily impossible to prove in the case of lost goods, whether they were lost on board or after discharge, the clause would in practice usually be brutum fulmen. It is indeed true that the language of a bill of lading must be taken against the carrier, but it appears to us that the interpretation suggested would too plainly contradict its purpose. Therefore, we read the phrase, "discharged from the vessel," as meaning, not that the goods have merely gone over the ship's side to the wharf, but that they have been delivered to the shipper. Anything else, for the reasons just given, would upon most occasions delete it from the contract, and cannot be thought to be its meaning.

■ However, while the clause is valid [Anchor Line, Ltd., v. Jackson, 9 F.(2d) 543 (C. C. A. 2); The Texas Maru, 13 F.(2d) 538 (C. C. A. 2)], it must give the shipper a reasonable opportunity to make his claim. In the case of damage he has such an opportunity before removal, at least if the damage be apparent on inspection; but when there is a shortage he cannot reasonably be asked to act until he knows that he is not to get his whole parcel. If the goods are delivered in installments, he may be told of the shortage when he receives the first; we need not say whether in that case he must make claim before he removes that. But it would seem to be the only fair meaning of the clause that if he knows of the shortage, he must give notice at least before taking that which he understands to be the last installment. Then at any rate he has ample opportunity, and the purpose is certainly to give the carrier notice as soon as that can conveniently be done.

■ Upon the issue as to whether timely notice has been given, the shipper has the burden of proof. Whatever may be thought of this as res integra, we at least are now too definitely committed to change. The General Geo. W. Goethals (C. C. A.) 298 F. 935; Cudahy v. Munson Line (C. C. A.) 22 F.(2d) 898. In the case at bar the question comes to this: Did the libellant definitively know that the two bales were lost before December twenty-second? He must show that he did not, and the proof is somewhat equivocal. He first made his claim on the twenty-fourth by letter dated the day before; it merely stated that he meant to hold the respondent responsible and would give the details of his claim when they were determined. On the twenty-eighth he wrote again, repeating the claim and speaking of the goods as "missing" and "not yet received." The claim, qua claim, would normally presuppose an existing loss, but that is not inevitable. Although, if the goods had not been abandoned, the time had not yet come to claim, it was at least prudent to put it in, as soon as possible, for carriers are sensitive in such matters. The reference in the second letter certainly implied that the disappearance might not be final, and presupposed that something more would be done to find them. The respondent's letters in January and February prove the correctness of this surmise. They show that the carrier was still in hopes, was still searching, and proposed to continue. Just when it did give up and declared further efforts fruitless, does

not appear, but it was certainly long after the claim was made.

When one says that there is a "shortage" in delivery, one means that some of the goods are lost, not merely mislaid. True, one may speak of something as lost which is merely missing at the moment, but actual loss is only when the search is given up, and the thing is accepted as gone. This seems to us the proper interpretation to put upon the clause in question. It would indeed be an unreasonable requirement that a shipper may not take the last of those things found, because he is told that so far, the remainder is not at hand. The time to make claim is only when the shortage has been ascertained; when the carrier admits that he cannot deliver. Not only does it not appear that this was not true on December twenty-second, but it affirmatively appears that the carrier had said nothing of the kind before December twenty-fourth, when the claim was made. Though, strictly, the claim was premature, that does not mar its effect. It seems to us that the libellant has borne the burden.

█ The bill of lading limited the recovery to £20 on each package, unless some greater value was declared and the extra freight paid; it also contained a clause that the contract should be "governed by English law." The British Carriage of Goods Act, § 6, art. III, provides that no clause in a bill of lading shall "lessen" the "liability" of the carrier except as the act allows, and section 5 of article IV may, arguendo, be assumed to forbid any limitation below £100 a package. As matter of interpretation of the document as a whole, we are to take the specific as prevailing over the general, and the £20 clause as paramount to these sections of the act. Had the bill been drawn in England this would not be enough; the validity of the clause would depend upon British law. In fact, it was drawn and delivered in Italy, and it is the law of that kingdom by which alone the question is to be decided; that is, how far the agreement raised an obligation. Cuba R. R. Co. v. Crosby, 222 U. S. 473, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40. People cannot by agreement substitute the law of another place; they may of course incorporate any provisions they wish into their agreements—a statute like anything else—and when they do, courts will try to make sense out of the whole, so far as they can. But an agreement is not a contract, except as the law says it shall be, and to try to make it one is to pull on one's bootstraps. Some law must impose the obligation, and the parties have nothing whatever

to do with that; no more than with whether their acts are torts or crimes.

█ The difficulty here is that nobody has proved what was the law of Italy. Strictly, that might cut the whole ground from under the libellant's feet; he must maintain that such a document raises some obligations; if not, he is forced back upon what can be implied from loading the goods on the "Berengaria" at Southampton. However, even though Italy is a country where we know the civil law to obtain, we are not bound to complete agnosticism. Compagnie, etc., v. Rivers, 211 F. 294 (C. C. A. 2); The Hanna Nielsen (D. C.) 25 F.(2d) 984. The extent of our right to make any assumptions about the law of another country depends upon the country and the question involved; in common-law countries we may go further than in civil law; in civilized, than in backward or barbarous. We can say more in the case of France or Italy, than of Abyssinia, or Afghanistan (Aslanian v. Dostumian, 174 Mass. 328, 54 N. E. 845, 47 L. R. A. 495, 75 Am. St. Rep. 348); less, than in the case of England or Australia. No doubt, when there is no evidence, we are always much limited in cases where the common-law does not prevail; but we are not quite without power in commercial matters arising in one of the great commercial countries of Western Europe. Kales, 19 Harv. L. R. 401, 409. We can assume that in Italy an agreement of carriage creates obligations, generally measured by the language used. Mittenthal v. Mascagni, 183 Mass. 19, 66 N. E. 425, 60 L. R. A. 812, 97 Am. St. Rep. 404; Parrot v. Mexican Central Ry., 207 Mass. 184, 93 N. E. 590, 34 L. R. A. (N. S.) 261; Sliosberg v. N. Y. Life Ins., 125 Misc. Rep. 417, 211 N. Y. S. 270, affirmed 217 App. Div. 685, 217 N. Y. S. 226. We may not, however, assume anything as to how far a carrier by contract is allowed to set a value upon the goods he carries; as to that we know nothing. Prima facie, the agreement is a contract; he who maintains that in a given situation it is not, must prove the law of Italy. Sokel v. People, 212 Ill. 238, 72 N. E. 382. The libellant has not proved it, and he must lose.

We might indeed have to refuse to give effect to the clause, whatever the Italian law, if we disapproved the result too much, but that question does not arise. The limitation, if made here, would have been valid. Lawrence Leather Co. v. Compagnie Generale Transatlantique, 18 F.(2d) 930 (C. C. A. 2).

Decree reversed and decree directed for the libellant for the equivalent of £40.