McALESTER CORPORATION v. WHEELER.

No. 34763.   Dec. 4, 1951.

*239 P. 2d 409.*

Richardson, Shartel & Cochran, R. C. Jopling, Jr., and F. M. Dudley, Oklahoma City, for plaintiff in error.

Counts & Counts, McAlester and Oklahoma City, and James F. Haning, Wewoka, for defendant in error.

BINGAMAN, J.   This is an action for damages for personal injuries and the

pain and suffering caused thereby, brought by the plaintiff, Kathelene Wheeler, against the defendant, Mc-Alester Corporation. The trial court overruled defendant's plea to the jurisdiction, and submitted the cause to a jury, which rendered a verdict in favor of plaintiff. Defendant appeals.

The injuries sustained by plaintiff were due to the escape of sulphur dioxide gas from a partly dismantled refrigerator in the kitchen of the Aldridge Hotel Coffee Shop in the city of Mc-Alester. The hotel and coffee shop were owned and operated by defendant, and plaintiff was employed as a waitress in the coffee shop. The refrigerator unit, from which the gas escaped, had been partially dismantled and was used in the kitchen as a table. Escaping gas was first noticed on May 9, 1949, at about 7 o'clock a. m. Defendant's engineer and assistant engineer were notified of the escaping gas, and attempted to prevent its further escape by various means which were apparently unsuccessful. Plaintiff's work day began at 7 o'clock a. m., and ended at 3 p. m., and according to her testimony she noticed some ill effects from the gas early in the morning, but did not know that her ill feeling was occasioned by inhaling it. As the day progressed her condition grew worse, and at some time between 2 and 2:30 she became unconscious and had to be removed to the hospital. She remained in the hospital for some 30 days. After her discharge she continued to receive treatment by her physician but has never regained her health and strength, and medical testimony, produced by her, was to the effect that she would in all probability be permanently incapacitated for the work she had formerly done, or from the doing of any work which required physical effort.

Defendant contended in the lower court, and here contends, that the trial court was without jurisdiction: (1) Because plaintiff had elected to take compensation under the Workmen's Compensation Act, and (2) because the coffee shop and kitchen constituted a workshop as defined by our decisions, so that compensation for plaintiff's injuries could be awarded only by the State Industrial Commission.

Defendant's contention that plaintiff elected to take compensation for her injuries is based upon the fact that it carried compensation insurance, and that plaintiff, at the suggestion of its auditor, signed a claim for compensation which was filed with the State Industrial Commission, and thereafter received six checks of $10 each from its insurance carrier, four of which were cashed. It points out that in National Bank of Tulsa Bldg. v. Goldsmith, 204 Okla. 45, 226 P. 2d 916, and Crosstown Grill v. State Industrial Commission, 204 Okla. 332, 229 P. 2d 573, we held that an employee, not actually engaged in hazardous work, could, when his employer carried compensation insurance and the worker's wages were included in those upon which the premium was computed, elect to pursue the remedies provided by the Workmen's Compensation Act instead of his common law remedy for injuries received in the course of his employment.

We agree that under the above decisions plaintiff had the right to elect which of these remedies she would pursue, but the evidence produced was wholly insufficient to establish that she did elect to take compensation.

The testimony as to the circumstances surrounding the signing of the claim is conflicting, the auditor testifying that she advised plaintiff that it was a claim for compensation and that the instrument was fully filled out when plaintiff signed it, while plaintiff states that she was told only that the signing of the instrument would enable her to draw some money from the defendant's insurance carrier, which would help to support and maintain her family of three children, and that it was a blank form when she signed it. There is no testimony indicating that plaintiff was advised of her rights,

or knew that more than one remedy was open to her; she did not have an opportunity to consult an attorney and receive independent advice, and apparently the proceedings before the commission were conducted solely by the defendant. Plaintiff tendered the amount received by her to the insurance carrier and on its refusal tendered the money in court. It further appears that after this case was filed, the commission, on motion of plaintiff's attorneys, vacated the orders theretofore made.

In Associated Indemnity Corp. v. Landers, 159 Okla. 190, 14 P. 2d 950, we said:

"Among the other requirements essential to the application of the rule of election of remedies is knowledge of the facts indicating a choice between inconsistent remedies, and, in the absence of knowledge of the facts, there cannot be a successful plea of election of remedies."

In Noble Drilling Co. v. Murphy, 131 Okla. 34, 267 P. 659, we quoted with approval from Spread v. Morgan, 11 H. L. Cas. 588, 615, 11 Reprint, 1461, as follows:

"In order that a person who is put to his election should be concluded by it, two things are necessary: First, a full knowledge of the nature of the inconsistent rights, and of the necessity of electing between them. Second, an intention to elect manifested, either expressly or by acts which imply choice and acquiescence."

Defendant's contention that the kitchen and coffee shop constituted a workshop as defined by our statutes and decisions is based upon the fact that in the kitchen were a number of machines operated by power, such as a dishwashing machine, electric mixer, meat slicing machine, as well as a bread warmer. Defendant asserts that its kitchen contained much more machinery and equipment than that contained in the Plaza Grill, which was described in Plaza Grill v. Webster, 182 Okla. 533, 78 P. 2d 818, or that in the butcher shop referred to in Hurley v. O'Brien, 192 Okla. 490, 137 P. 2d 592, and that it was therefore a workshop, citing Mayo Hotel v. Barney, 181 Okla. 430, 74 P. 2d 621, and McClung v. Colclasure, 197 Okla. 445, 172 P. 2d 623. We do not agree with this contention, but think the case comes within the rule announced in Hurley v. O'Brien, supra, and Plaza Grill v. Webster, supra. Furthermore, from the evidence it appears that the waitresses while required to enter the kitchen for the purpose of obtaining butter, ice, salads and other articles of food, and of giving their orders to the chef, were not required to operate the power-driven machinery, and did not come in contact with it. It is to be noted that the statute, 85 O. S. 1941 §3, provided that where several classes of work are performed in a hazardous occupation, the commission shall classify such employment and the Act shall apply only to employees engaged in manual or mechanical labor of a hazardous nature. In Renner v. Board of County Com'rs of Lincoln County, 195 Okla. 400, 158 P. 2d 341, we pointed out this provision of the law, and held that a workman engaged in performing road work, a hazardous occupation, was not engaged in such hazardous occupation when terracing farm land. We conclude that the district court had jurisdiction of this action.

Defendant's contentions that the trial court erred in refusing to give its requested instructions, Nos. 5, 6, 7 and 8, while separately discussed in its brief, may be disposed of together. Instruction No. 5 was to the effect that one who voluntarily places himself in a dangerous position could not recover for resulting injuries; No. 6 was that the owner was not liable for injuries to another where the dangers were as obvious to the injured person as to the owner; No. 7 was that ordinary prudence required every person to use his faculties for his own protection and avoid places of danger, and that it was the duty of every person to exercise intelligence to discover and avoid dan-

gers which might threaten him; No. 8 was that if plaintiff knew, or by the exercise of ordinary care should have known, that sulphur dioxide gas was escaping from the refrigeration unit and that it would be dangerous to remain in the coffee shop and breathe said gas, so that she would become ill or sustain injury, then it was her duty to leave the coffee shop and not re-enter the same until the condition was repaired.

It is obvious that all of these instructions were predicated upon the proposition that the plaintiff knew, or by the exercise of ordinary care should have known, that the escaping gas was dangerous, and should have taken precautions to avoid injury. While they may be correct as abstract statements of law, we think they were properly rejected by the trial court, since there is no evidence tending to show that plaintiff knew or had any reason to believe that the gas was detrimental to human beings, or that it would cause injury to herself. She testified that while she felt discomfort in that it rendered her breathing more difficult, and that later she became nauseated and could not eat, she did not attribute these discomforts to the effect of the gas; that she assumed that if the gas was injurious the coffee shop would have closed, or that some precaution would have been taken to protect the waitresses and customers from the effects of the gas by removing the refrigerator or otherwise, and that in the absence of any such precaution she assumed that the gas was not injurious and did not attribute her condition to its effects. There is no evidence in the record to show that she was advised of the fact that the gas was poisonous, or that she knew that her symptoms were caused by inhaling it. The trial court did not err in refusing to give the requested instructions.

Defendant's contention that the trial court erred in giving to the jury instruction No. 6-A, presents the serious question in the case. In that instruction the trial court told the jury that the evidence showed that on May 9, 1949, a leak or break occurred in the old refrigerator permitting sulphur dioxide gas to escape therefrom. The instruction then proceeds as follows:

"And, in this connection, you are instructed that the defendant is charged under the law with knowledge of the nature of the type of gas contained in said coils and unit and whether the same was dangerous to the health, life and safety of its employees. If you find and believe from a preponderance of the evidence that the gas was poisonous, then after defendant obtained notice of such break or leak and that such gas was escaping into the coffee shop where plaintiff was employed and working, it was the duty of the defendant to immediately take steps to stop the leak in the refrigeration coils or unit and that in the event of its inability to stop the leak or to remove the gas without endangering the health, safety and lives of the employes, that it was the duty of said defendant to warn and notify the employes therein that said gas was escaping and would endanger their health, safety and life if they continued to work near or around said escaping gas, and a failure to do these things, or either of them, constitutes negligence."

This instruction was duly excepted to by defendant.

Defendant urges that there had been no previous escape of gas from the unit, and that plaintiff's injuries, if any, resulting from the escaping gas, would constitute an accident not easily foreseen or which a reasonable and prudent man might expect or anticipate, citing Allen v. Shell Petroleum Corporation, 146 Kan. 67, 68 P. 2d 651, Grammer v. Mid-Continent Petroleum Corporation, 71 F. 2d 38, and Pinkley v. Chicago & E. F. R. Co., 246 Ill. 370, 92 N. E. 896. We deem it unnecessary to review these authorities at length in this opinion, since a reading of them convinces us that they are inapplicable to the instant case. Herein both the defendant's manager and engineer testified that they had knowledge of the escaping gas and that it was sulphur dioxide. That the

engineer considered it dangerous was evidenced by the fact that two witnesses, the cashier in the restaurant and a waitress who was working there, testified that at 10 o'clock that morning they heard the engineer tell some of the waitresses that the place should be closed. A barber in the hotel barbershop, who assisted in caring for plaintiff when she was unconscious and awaiting the arrival of the ambulance to take her to the hospital, testified that the engineer told him that they tried to close the place. Although these statements were denied by the engineer, and he also denied that he had suggested to the manager that the place be closed, the fact remains that they knew of the nature of the gas and could have easily ascertained that it was dangerous. We think that it became their duty, upon the discovery that the gas was escaping, to take some steps to ascertain whether or not it might prove injurious to human beings, and to take proper precautions to avoid injury which might result therefrom, or to caution the employees as to its probable ill effects so that they might safeguard themselves therefrom. The fact that they did not anticipate such a serious injury as that suffered by plaintiff does not relieve them of the obligation to exercise reasonable care, and as we have many times pointed out, the failure to exercise reasonable care is negligence.

In 56 C.J.S., p. 887, §188, the author says:

"It is not necessary to make a master liable for a negligent omission or act that he should have contemplated or should have been able to anticipate the particular consequences, the form of the accident, or the nature of the injury, and, where the act or omission of the master threatened danger, the fact that the accident itself was unusual, extraordinary, or even unheard of does not relieve him from liability. Thus a master whose negligent act results in an injury to his servant is liable therefor although the consequences of the act prove more injurious than would ordinarily be antici-

pated, and if the full consequences attributable to the negligent act are the natural and probable result thereof the master may be liable although the consequences may not have been specifically contemplated."

In Black Gold Petroleum Co. v. Webb, 186 Okla. 584, 99 P. 2d 868, we followed the rule announced in the above quotation, citing 45 C. J. p. 918, §484. In that case an employee received a back injury while using a defective chain tong in the construction of a pipe line. Ordinarily, the injury would not have been fatal, but it developed that his appendix was located on his left side; had adhered to the back wall of the peritoneal cavity, and was pulled loose from some of the adhesions, resulting in infection which caused his death. We held that where injury to an employee was reasonably to be anticipated as a result of the use of the defective tool, the fact that the ultimate result of the injury was not specifically foreseeable did not absolve the employer from negligence. We think this rule applies in the instant case.

The final contention of the defendant is that the verdict and judgment in the amount of $30,000 is excessive, and conclusively indicate that the jury was actuated by bias, prejudice and passion. We are unable to agree with this contention.

From the record it appears that the plaintiff was a woman 35 years of age, the mother of three children, aged from ten to five years, and that she was their sole support; their father having abandoned her and the children; that she was able to and did perform the services required of her as a waitress in the hotel coffee shop, earning in tips, meals and salary approximately $150 per month. It was agreed that she had an expectancy of 31.8 years, and that the total actual expense incurred as a result of the injury was $828.52.

The record shows that she had had several operations, the last being the removal of her appendix, which had been performed approximately a year

and a half prior to the date of the injury complained of herein, but that she had fully recovered from these operations and was able to do her housework and perform her duties as waitress. From her testimony it appears that ever since the date she inhaled the poison gas she has had difficulty in breathing, has severe pain in her chest when she attempts to work, and is very weak, and her physicians testified that in their best judgment it was extremely doubtful if she would ever recover sufficient strength and health to perform any labor by which she could earn a livelihood. It appears that after her injury and prior to the trial of the case, she had been compelled to borrow from her relatives and friends in order to support herself and her children, having no income whatsoever save and except what she could earn by her own industry. Defendant says that the introduction of certain evidence by it, which tended to humiliate the plaintiff, and to disgrace her in the public eye, undoubtedly influenced the jury in its deliberations, and that the closing argument of counsel for plaintiff, and his references to this testimony, tended to inflame the minds of the jury against the defendant. While this evidence of a former disease, of which it appeared plaintiff had been completely cured, might have had some tendency to reflect upon her, there is nothing in the record to indicate that the jury, in arriving at the verdict, was unduly influenced by it.

When the plaintiff's condition is considered, taking into consideration the fact that she was the sole support of her children, and that the evidence showing that she had suffered and continued to suffer severe pain as a result of the injury, we are unable to agree that the verdict is excessive.

Affirmed.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.