TIDEWATER OIL COMPANY, a corpo-
ration, Appellant,

v.

Dennis F. WALLER, Appellee.

No. 6643.

United States Court of Appeals
Tenth Circuit.

March 20, 1962.

A. M. Covington (of Covington & Gib-
bon), Tulsa, Okl., for appellant.

Floyd L. Walker, Tulsa, Okl., for appel-
lee.

Before MURRAH, Chief Judge, and BRATTON and BREITENSTEIN, Circuit Judges.

MURRAH, Chief Judge.

This is an appeal from a judgment of a district court in Oklahoma in a diversity suit for damages for personal injuries allegedly caused by the appellant-Tidewater Oil Company's negligence in the country of Turkey. The basic facts are that the appellee, Waller, an employee of Spartan Aircraft Company, an Oklahoma manufacturer of mobile homes, was sent to Turkey to perform repair work on behalf of his Oklahoma employer on mobile homes belonging to a pipeline company. While in Turkey, Waller undertook on behalf of his Oklahoma employer, to perform similar work on the mobile homes of Tidewater Oil Company at a remote and isolated oil well drilling site. Waller was injured when Tidewater's plane in which he was being transported crashed while attempting to land at the drilling site where the repair work was to be done.

It seems agreed that Waller was injured in the course of his employment with Spartan, his Oklahoma employer, and that he was paid $35.00 per week in lieu of Oklahoma's workmen's compensation, and all hospital and medical care. After the commencement of this suit against Tidewater, Waller filed a workmen's compensation claim with the Oklahoma Workmen's Compensation Commission, and at the same time sought and obtained an order of the Commission holding the claim in abeyance pending the outcome of this litigation.

After alleging his Oklahoma employment and his undertaking to perform work in Turkey for Tidewater on behalf of his Oklahoma employer, Waller alleged that his injuries were caused by the unsafe condition of the airstrip where Tidewater's plane was required to land and the negligent operation of it. It was specifically alleged that his right to recover was to be determined by the laws of Turkey, under which Tidewater owed Waller the duty to use ordinary care in the operation of the aircraft, and to furnish a reasonably safe place on which to land it; and that res ipsa loquitur was recognized in Turkey and applicable here.

Tidewater admitted Waller's employment in Oklahoma and his undertaking to do certain work for it in Turkey as a loaned servant of Spartan, and that the rights and liabilities of the parties were governed by the laws of the country of Turkey. It denied the allegations of negligence or that res ipsa loquitur was applicable. As a separate and primary defense, Tidewater asserted that any claim or right of action is exclusively cognizable under either the workmen's compensation law of the country of Turkey, or of the State of Oklahoma, and in either event, Tidewater was secondarily and hence exclusively liable for workmen's compensation benefits; and that the Oklahoma court was therefore without jurisdiction to entertain this suit.

In the trial of the case, neither party offered any evidence of controlling and applicable Turkish law, and the court manifestly proceeded upon the factual premise that the tort laws of Turkey permitted recovery for the asserted wrong as if in Oklahoma. The first trial upon this theory resulted in a jury verdict for Tidewater. A new trial was granted and an appeal from such order was dismissed. See 10 Cir., 280 F.2d 433. This appeal is from a judgment based upon a jury verdict for Waller. It seems to be now conceded that the evidence with respect to common law negligence, cognizable in Oklahoma, was sufficient to support the jury verdict. Tidewater seems to suggest, however, that Waller elected under Section 4 of the Oklahoma Workmen's Compensation Act (85 O.S.Supp. § 4), as amended in 1955, to take the benefits provided under the Oklahoma Act, and having done so, Tidewater thereupon became secondarily liable for such benefits under Section 11 of the Act, as construed and applied in Mid-Continent Pipeline Co. v. Wilkerson, 200 Okl. 335, 193 P.2d 586; Burk v. Cities Service Oil Co. of Dela., 10 Cir., 266 F.2d 433; Lee Evans Oil & Gas Co. v. Superior Ct. of Seminole Co.,

Okl., 344 P.2d 670; and that such liability is exclusive of all other under Section 12, and Tidewater is therefore not subject to suit as a third-party tort-feasor under Section 44 of the Act. This comes from the fact that Waller did accept temporary benefits and medical care under the Act, and did file a claim with the Oklahoma Workmen's Compensation Commission.

The short answer to this proposition is that Waller did not, in our view, effectively elect under Section 4 to take the compensation benefits as provided in the Oklahoma Act. From and after the 1955 Amendment to Section 4, the provisions of the Oklahoma Workmen's Compensation Act became applicable to employers and employees for accidental injuries arising out of and in the course of employment under a contract entered into in Oklahoma, whether the accident occurred within or without the state. If the compensable injury occurs outside the state, the employee may elect to pursue his remedy under the Oklahoma Workmen's Compensation Act, and the State Industrial Court is vested with jurisdiction of the claim as fully as if the injury or accident occurred within the state. But such right of election does not preclude an employee from pursuing his remedies provided under the laws of the state where the injury occurred, as was his right before the Amendment. And, if the injured employee elects to pursue his remedy under the laws of the state of the injury, and it is prosecuted to a final determination, he is precluded from any right of action under the laws of the State of Oklahoma. The Amendment further significantly provides that the injured employee may file his claim or commence his action before the Oklahoma Industrial Court for an injury occurring outside the state at any time prior to the adjudication of his right under the laws of another state. The receipt of temporary compensation and medical care before the commencement of this suit and the formal filing of the claim before the Industrial Court, seems to be accepted procedure. The State Industrial Court entered a formal order holding the claim in abeyance, and it in no wise constituted an election to pursue his remedy under the Oklahoma Workmen's Compensation laws. It merely served to preserve his right of action in the event his remedy in another state should not be prosecuted to final determination. Cf. Parkhill Truck Co. v. Wilson, 190 Okl. 473, 125 P.2d 203; McAlester Corp. v. Wheeler, 205 Okl. 446, 239 P.2d 409.

In this posture of the case, we need not ponder the self-suggesting question whether an election to take the extraterritorial benefits provided by Section 4 of the Oklahoma Act, as amended, under an Oklahoma employment contract, would render Tidewater secondarily liable therefor by virtue of its Turkish contract, so as to insulate it from any other asserted liability, i. e., whether the doctrine of Mid-Continent extends to compensable and compensated accidental injuries occurring outside the state. The decisive issue, as indeed the parties ultimately seem to agree, is whether Waller, having elected to pursue his remedy under the law of Turkey, where the injury occurred, may maintain this suit under and by virtue of such laws.

It is agreed that the law of Turkey is controlling and is a matter of fact of which the Oklahoma Court cannot take judicial notice; and, having pleaded Turkish law to sustain his right of recovery, Waller is under the burden of going forward with proof of it at the risk of nonpersuasion. See Vol. 3 Beale, Conflict of Laws, p. 1663, § 621. And see 12 Okla.Stat., 1951, § 481; Okla.L.Rev., Vol. 5, p. 408.

Tidewater takes the position that since there was no evidence of controlling Turkish law, Oklahoma law, including its workmen's compensation statutes, is applicable; and that under Section 11 thereof, as construed in the Mid-Continent case, it is secondarily and exclusively liable under the provisions of the Workmen's Compensation Act, as if the accident had occurred in Oklahoma; provided of course that the work being per-

formed by Waller at the time of his injury was an integral and necessary part of the hazardous business in which Tidewater was engaged. And see Amerada Petroleum Corp. v. Vaughn, 200 Okl. 226, 192 P.2d 639; McDuffie v. Neon Sign Co., 202 Okl. 568, 215 P.2d 839.

In the absence of proof of applicable foreign law, courts of the forum have rather unevenly followed three alternative courses: (1) dismissed the claim for failure to make out a prima facie case; (2) conveniently applied the law of the forum; and (3) indulged in certain presumptions as to the foreign law and applied it accordingly. See Beale, p. 1675, § 622A.1; Wigmore on Evidence, 3rd Ed., p. 492, § 2536; 19 Harv.L.Rev., 401; 75 A.L.R.2d 529. Courts which arbitrarily apply the law of the forum do so as a rule of convenience in disregard of the evidentiary rule on burden of proof, or going forward with the evidence at the risk of nonpersuasion. Courts which indulge in the presumption of foreign law do so by first taking judicial notice of the fundamental system of jurisprudence in the foreign country, and having noticed that its system is fundamentally the same, will indulge in the presumption that applicable law is similar and apply it accordingly. If, however, having judicially noticed that the systems of the two are fundamentally different, it will not indulge in any presumption of similarity, except the juridical principles which may be assumed to inhere in the laws of all civilized countries. Parrot v. Mexican Cent. Ry. Co., 207 Mass. 184, 93 N.E. 590; Cuba R. R. v. Crosby, 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274; E. Gerli & Co. v. Cunards Co., 2 Cir., 48 F.2d 115; Aslanian v. Dostumian, 174 Mass. 328, 54 N.E. 845; Compagnie Generale Transatlantique v. Rivers, 2 Cir., 211 F. 294; Beale, Vol. 3, p. 1676, § 622A.2. Oklahoma, whose conflicts rule we apply, has recognized the factual quality of applicable general law, and along with most other states has statutorily provided for the admissibility of such laws. See Sec. 484, Title 12 Okl.St.Ann. It has em-

braced the theory that in the absence of pleading and proof of applicable law of a sister state, it will apply its own law, both general and statutory, on the convenient assumption that the law of the sister state is the same as its own. See Gray v. Martin, 206 Okl. 167, 242 P.2d 698, and cases cited; In re Langely, Okl. Cr., 325 P.2d 1094; Beale, Vol. 3, p. 1682, § 6231.1.

We have found no cases in which the Oklahoma courts have been confronted with application of the law of a foreign country in the absence of any proof of it, except some early cases in which they declined to take judicial notice of the laws of the Five Civilized Tribes. See Sewell v. Setterman, 73 Okl. 116, 175 P. 111; Boudinot v. Morris, 26 Okl. 768, 110 P. 894. See also note and comment on judicial notice in Oklahoma, Vol. 5, Okla. L.Rev., 1952, pp. 406, 408. Since the legal system prevailing in Turkey is judicially known not to be the same as Oklahoma, but is wholly different, it does not seem reasonable to presume under any circumstances that the general law of Turkey is the same or similar to Oklahoma, much less the workmen's compensation law. Cf. Aslanian v. Dastumian, supra; Cuba R. R. Co. v. Crosby, supra. There is a rational and, we think, admissible basis, however, for presuming that as a civilized country with a juridical system based upon civil law, Turkey recognizes the universal fundamental principle which embraces the legal duty of one to exercise due care not to injure another, and that its courts of justice will grant compensable redress for the unexcused violation of that duty. Parrot v. Mexican Cent. Ry. Co., supra; Annot. 75 A.L.R.2d 534, § 3.

Of course if Oklahoma law is to be transplanted to Turkey and applied to a Turkish employment contract, it cannot be doubted that Waller was injured in the course of his employment under the Turkish contract; and, making application of the Oklahoma Workmen's Compensation Act as Turkish law, Tidewater would doubtlessly be primarily and exclusively liable under its Turkey em-

ployment contract; for, in these circumstances, we should have no difficulty saying as a matter of law, that the maintenance of the mobile homes at the remote drilling site, was a necessary and integral part of Tidewater's hazardous business of drilling oil wells. Cf. Burk v. Cities Service Oil Co., supra. In that respect, it is important to note that Tidewater's liability is in no wise governed by Waller's Oklahoma employment contract with Spartan to which it was not a party, but rather, under the Turkey employment contract to which it was a party, and which must condition the rights of the parties.

■ Obviously, this suit was not tried and submitted to the jury on the theory that applicable Turkish law embraced a workmen's compensation act identical to or even similar to that of Oklahoma. Nor does the record before us indicate that either party had any such farfetched factual theory in mind at the time of trial. Rather, as we have seen, it is clear that the case was tried on the factual premise that Turkish law recognized the acts complained of as redressable wrongs. There is no suggestion that the asserted remedy is contrary to the public policy of the State of Oklahoma. Moreover, Section 4 of the Oklahoma Workmen's Compensation Act, supra, which grants the election to claim extraterritorial benefits, specifically provides that such right of election shall not preclude an injured employee from pursuing his remedy under the laws of the state where the injury occurred. Having accorded this right of election, we should not presume that Oklahoma would close the doors of its courts to the assertion of the remedy, even though it would have been unavailable if the injury had occurred in the State. Cf. Urda v. Pan American World Airlines, 5 Cir., 211 F.2d 713, where the remedy under the Workmen's Compensation Law of the State was exclusive of all others without right of election. There being nothing in the public policy of the State of Oklahoma to forbid a remedy, the Oklahoma courts will enforce the right in accordance with the prevailing forms of practice and procedure. It was on this factual basis that the court formulated the law of the case and submitted it to the jury in accordance with the rules of evidence, standard of care and measure of damages prevailing in Oklahoma. And see Liechti v. Roche, 5 Cir., 198 F.2d 174. Inasmuch as the instructions of the court are not in issue, we will of course assume that they correctly stated the law of the case, and the judgment of the court based upon the jury verdict is sustained.

■ Finally, Tidewater, having perpetuated its objections to the order granting a new trial in the first instance, earnestly contends that the court abused its allowable discretion. The wide discretion of the trial court in granting or denying a new trial is conceded, but the discretion is said to be somewhat more limited when, as here, the order granting the new trial is based upon the premise that the jury verdict was against the weight of the evidence.

In granting the new trial, the court stated that "As a thirteenth juror * * the court cannot agree with the jury's verdict and * * * finds that justice can only be served by submitting this cause to another jury * * *." It thus appears that the court's order is based on the view that the verdict was against the clear weight of the evidence. This being so, Tidewater points to the sharp conflict in the evidence on the critical issue of negligence, and says that the granting of a new trial in these circumstances amounts to a usurpation of the province of the jury as finders of fact.

Rule 59 F.R.Civ.P., 28 U.S.C.A., provides that a new trial may be granted in jury trials "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." The rule makers did not attempt to delineate all of the reasons, but obviously had reference to grounds for granting new trial as at common law. Indeed, the Seventh Amendment to the Constitution provides that "no fact tried by a jury, shall be other-

wise reexamined in any Court of the United States, than according to the rules of the common law." And, Professor Moore says that the Seventh Amendment is the only present limitation upon the reexamination of facts found by a jury. See Moore's Federal Practice, Vol. 6, p. 3733, § 59.05(2). Long before the adoption of the Seventh Amendment, common law courts were granting motions for new trial upon any grounds which, in the sound judgment of the trial court, were in the interest of the proper administration of justice. Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350. Insufficiency of the evidence as one of the grounds for granting a new trial was expressly enumerated in Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147. See Moore's Federal Practice, Vol. 6, p. 3814, § 59.08(5); Barron & Holtzoff, Federal Practice and Procedure, Vol. 3, p. 338, §§ 1301–2.

■ When the evidence is wholly insufficient to support a verdict, it is the duty of the trial court to direct a verdict or enter a judgment n. o. v., and the court has no discretion in that respect. But, the granting of a new trial involves an element of discretion which goes further than the mere sufficiency of the evidence. It embraces all the reasons which inhere in the integrity of the jury system itself. Felton v. Spiro, 6 Cir., 78 F. 576; Aetna Cas. & Surety Co. v. Yeatts, supra.

In a very recent case, the Third Circuit reversed an order granting a new trial in a case where the subject matter of the litigation was simple and easily comprehended by intelligent laymen. The majority of the court took the view that the trial court had substituted its judgment for that of the jury, and in doing so, it had abused its legal discretion. Lind v. Schenley Industries, Inc., 3 Cir., 278 F.2d 79. While the discretion committed to the trial court is to be sure a judicial one, subject to review, we are unable to say that the trial court exceeded his allowable discretion in this case.

The judgment is affirmed.

BREITENSTEIN, Circuit Judge (dissenting).

Waller worked for Spartan under an employment contract made in Oklahoma. Spartan, which makes mobile homes, sent a crew, including Waller, to Turkey to repair mobile homes of a pipe line company. In Turkey, Waller's superior, acting on behalf of Spartan, contracted with Tidewater for the repair of mobile homes at an isolated location where Tidewater was engaged in oil exploration and production. An airplane, owned and operated by Tidewater, crashed on landing when taking Waller to the site in Turkey where the repair work was to be done. Waller received injuries for which he seeks recovery from Tidewater on the grounds that Tidewater was negligent in the operation of the airplane and in the construction of the runway provided for landing.

The case was filed in an Oklahoma state court and removed to federal court because of diversity. The trial proceeded on the agreed theory that Turkish tort law was the same as that of Oklahoma. The sufficiency of the evidence to sustain the tort liability of Tidewater is not questioned. The query is whether the suit may be maintained in Oklahoma.

Waller was not an employee of Tidewater. The Turkish contract was not a contract of employment but rather a contract between Tidewater and Spartan for specific work with payment therefor made to Spartan. The only pertinence of the Turkish contract is to the question of the secondary liability of Tidewater under the Oklahoma Workmen's Compensation Law, and that question arises only in the determination of the right of Waller to maintain this suit in Oklahoma.

A federal court sitting in Oklahoma follows the Oklahoma conflict of laws rule.[1] Oklahoma will not enforce a con-

---

1. Klaxon Company v. Stentor Electric Manufacturing Company, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L.Ed. 1477.

644

tract violative of its own public policy.[2] I assume that Oklahoma will follow the same rule in tort cases because the general rule is that foreign law, or rights based thereon, will not be given effect contrary to the settled public policy of the forum.[3]

The Oklahoma Workmen's Compensation Law provides an exclusive remedy for the liability of an employer except in circumstances not here material.[4] The courts have construed that act as also providing an exclusive remedy against those secondarily liable for a worker's injuries.[5] Secondary liability arises when the injury occurs in the course of the performance of hazardous work for the principal and when that work is "necessarily connected with, and incident to the business of the principal employer." At the isolated location where this accident happened, Tidewater had to maintain living quarters for its workers and the repair of such quarters was necessarily connected with, and incidental to the business of Tidewater. Under Oklahoma law, Tidewater was secondarily liable and the compensation remedy was exclusive unless the Oklahoma law was changed by the 1955 amendment to § 4 of the state compensation law.[6]

Prior to the 1955 amendment the Oklahoma compensation law did not cover injuries received in accidents occurring outside of Oklahoma. The amendment made it applicable to such injuries and permitted an injured employee, working under an Oklahoma employment contract, to elect to proceed under the law of the state in which the accident occurred or under the Oklahoma law. The first sentence of the amendment provides that all provisions of the compensation law apply "irrespective of where accident resulting in injury may occur." The second sentence covers the right of election. The third sentence reads:

"Such right of election shall, however, not preclude the injured employee from recovering any benefits or compensation provided under any law of the State where injury occurred, and if such action be so commenced in such other state, or under the law of another state, and is prosecuted to final determination, such employee shall thereupon be precluded from his right of action under the laws of this State."

In Groendyke Transport, Inc. v. Gardner, Okl., 353 P.2d 695, 698, the Oklahoma Supreme Court held that the third sentence of the 1955 amendment "refers only to claims under the compensation laws and has no relationship to actions at law for damages caused by third persons." [7] So construed, the third sentence does not change the Oklahoma policy as to the exclusiveness of the compensation law remedy. The generality of the first sentence retains that exclusiveness as Oklahoma policy. The majority opinion in this case collides directly with the rule that a cause of action created by the law of a foreign state or country cannot be enforced in another state or country contrary to the public policy of the forum.[8]

If the majority opinion is correct in holding that the third sentence of the 1955 amendment permits recovery in Oklahoma under the general laws, rather than the compensation laws, of the state where the accident occurred, then an employer may be sued in Oklahoma under the general tort laws of the state where-

2. Klein v. Keller, 42 Okl. 592, 141 P. 1117.

3. Restatement, Conflict of Laws, p. 731, § 612; 15 C.J.S. Conflict of Laws § 4(c) (4) (a).

4. 85 Okl.St.Ann. § 12 (1951).

5. See Burk v. Cities Service Oil Company of Delaware, 10 Cir., 266 F.2d 433 and the Oklahoma cases there cited.

6. 85 O.S.Supp.1955, § 4.

7. Even if this statement of the Oklahoma Supreme Court is dictum, it is binding on us. Hawks v. Hamill, 288 U.S. 52, 56–59, 53 S.Ct. 240, 77 L.Ed. 610; Whitaker v. Texaco, Inc., 10 Cir., 283 F.2d 169, 174.

8. See Urda v. Pan American World Airways, 5 Cir., 211 F.2d 713, and cases there cited.

in an accident occurred injuring his employee and that employer is without the protection of the exclusive remedy provision of the Oklahoma compensation law. I am convinced that this violates the construction placed on the 1955 amendment in the Groendyke case. Accordingly, I would reverse the judgment with direction to dismiss the action. Waller has his remedy under the Oklahoma Workmen's Compensation Law.