Thomas E. LANDRUM, Jr., Appellee,

v.

STANDARD OIL COMPANY (Indiana), a Corporation, et al., Appellants.

No. 44398.

Supreme Court of Oklahoma.

July 5, 1972.

James E. Poe, Tulsa, for appellee.

Best, Sharp, Thomas & Glass, Joseph M. Best, Joseph A. Sharp, Tulsa, for appellants.

DAVISON, Vice Chief Justice.

Appellants, defendants in the trial court, appeal from the trial court's order overruling a motion for a new trial to set aside and vacate a judgment against defendants, in favor of appellee, plaintiff in the trial court, in the sum of $75,000.00 with interest at 10% [per annum] from May 6, 1970. The judgment was entered on a jury verdict in that amount. Due to the arguments made on appeal it is necessary that we review the pleadings.

Plaintiff in his petition alleges that on March 20, 1968, as an employee of Tuloma Gas Products Company, a subsidiary of defendant, Standard Oil Company (Indiana), he was required to travel to Chicago on business for his employer on a prearranged airplane flight in a Fan Jet Falcon, an aircraft owned and maintained exclusively for Standard Oil Company by Nine-Ten Corporation and operated by defendants Morris, pilot, Bouteller, co-pilot, and Sikkink, passenger co-pilot, each an employee of Standard.

Plaintiff alleged further that during the flight to Chicago he was injured while the Fan Jet Falcon was under the exclusive direction and control of Morris, Bouteller and Sikkink, the latter two being subject to the direction of Morris, the pilot; that defendants should be required to appear and explain the circumstances hereinafter alleged which resulted in injury to plaintiff or be charged with legal responsibility under the doctrine of res ipsa loquitur.

Plaintiff alleged as an additional basis for his recovery that during the flight at an altitude of 30,000 feet, defendants Bouteller, the co-pilot, and Sikkink, the passenger co-pilot, while endeavoring to change seats in the cabin of the Fan Jet Falcon negligently and carelessly struck an inverter switch resulting in a sudden or instantaneous decompression and change in the interior pressurization system of the Fan Jet Falcon causing severe ear injury to plaintiff, loss of hearing, nausea, dizziness and headaches. Plaintiff has completely and permanently lost the hearing in his left ear and is subject to a constant ringing and noise level in his left ear as the direct and proximate result of the aforesaid negligence of Bouteller and Sikkink, which negligence is imputed to and chargeable to all defendants. Defendants answered denying each and every material allegation of plaintiff's petition and further denied that any unusual incident occurred that caused any injury to plaintiff.

Under appropriate assignments of error defendants urge three propositions.

Proposition I. The evidence introduced at the trial was insufficient to establish that the plaintiff's hearing disability was the result of any negligent acts by the defendants.

The plaintiff testified that about 15 minutes prior to the time of landing at the Midway Airport in Chicago "we had a sudden pressure change that boxed up my ears and was a painful pressure change that lasted several minutes then seemed to subside and then we went into our descent and again had pressure changes which descent was much more rapid than the commercial flight that I was accustomed to taking."

Plaintiff testified further that after he got on the ground "things seemed to clear up" but after the day's work was over while walking down Michigan Avenue: "I experienced an extreme pain across my forehead here and also buses and things like that as they would go by, cars just seemed much more noisier than you would expect a bus to sound." Plaintiff testified additionally concerning a loss of hearing and a staggering or loss of balance the following days. Defendants' counsel did not cross examine plaintiff on this aspect of his testimony.

The pilot in charge of the Fan Jet Falcon, R. E. Morris, Jr., who was called as a witness by plaintiff, testified that a pressure change occurred when co-pilot, Sikkink, was getting into co-pilot Bouteller's seat that resulted in a minor pressure change. Bouteller had gone to the rear of the aircraft to serve coffee to the passengers. Sikkink bumped his head on the auxiliary bus switch. Co-pilot Bouteller, who was called as a witness by plaintiff, testified in referring to the result of Sikkink's bumping his head on the auxiliary bus switch that as long as the switch was off the pressurization system would be inoperative. Related to plaintiff's additional discomfort during the descent to the airport, co-pilot Bouteller testified that for passenger comfort the aircraft descent should never be at a greater rate than 500

feet per minute. On this flight the descent was 600 feet per minute. Phillip Webb, one of the passengers on the flight, testified he suffered severe pain in his right ear. Jess Ross, another passenger, testified on cross examination that during the flight a pressure change occurred that caused a popping in his ears, and the pressure change prompted conversation at the time among the passengers; that this popping of his ears occurred during the descent of the flight.

Based on the history related to him by plaintiff Dr. R. E. Rhodes, ear, nose and throat specialist, a witness on behalf of plaintiff testified that he saw plaintiff initially on March 24, 1968 [the flight occurred on March 20, 1968] at which time plaintiff complained of dizziness and hearing loss associated with noise in his left ear in the same ear that he complained of his hearing loss; that plaintiff related his experience during his flight to Chicago and during the following day. As a result of Dr. Rhodes' examination, he recommended hospitalization and treatment. During plaintiff's hospitalization Dr. Rhodes made tests revealing that plaintiff had lost practically all hearing in his left ear and there is no type of medical procedure that would hold any hope of correcting this condition. Dr. Rhodes further testified that in all medical probability the loss of pressure in the cabin of the aircraft during plaintiff's flight to Chicago caused plaintiff's loss of hearing that resulted from bleedings in the inner ear due to a ruptured blood vessel. Dr. Rhodes testified further that at the time of the ear injury plaintiff was taking coumadin, a blood thinner; that as a consequence a ruptured blood vessel would result in excessive bleeding. The testimony revealed that plaintiff was taking coumadin because his heart was not receiving enough blood but there had been no damage to his heart muscle. Plaintiff had not suffered a heart attack.

Dr. Roger Wehrs, a witness on behalf of defendants, whose practice was limited to diseases and surgery of the ear, testified on the basis of the same history known to Dr. Rhodes. His testimony was to the effect that the pressure change in the cabin of the aircraft and plaintiff's rupture of a blood vessel in the inner ear was coincidental; that the change in pressure in the aircraft was not the cause. On cross examination Dr. Wehrs admitted that "if you stretch a point" a person's reaction to a sudden change in pressure can cause an involuntary constriction of the arteries.

We conclude on the basis of this testimony there is evidence to support the implied jury finding that defendants as a result of alleged specific acts of negligence did not maintain a properly pressurized aircraft during the flight and that the excessively rapid descent calls for the application of res ipsa loquitur. To pre-suppose negligence, it is not necessary that the ultimate consequences be specifically foreseeable. McAlester Corp. v. Wheeler, 205 Okl. 446, 239 P.2d 409. Moreover, we believe that the obvious sensing of the need for a pressurized aircraft had alerted defendants to the natural and probable consequence of injuries to the human ear if pressure is not evenly maintained during flight, or if descent in flight is too rapid. See Oklahoma Natural Gas Company v. Courtney, 182 Okl. 582, 79 P.2d 235.

The testimony of Dr. Rhodes, when believed by the jury, is adequate proof of causation. American Airlines v. Grimes, Okl., 352 P.2d 913; Orthopedic Clinic v. Hanson, Okl., 415 P.2d 991. In the latter cause, we held: "But even in cases of this nature, testimony of a qualified physician that the injury could have resulted from a certain cause together with corroborating evidence of the manner in which the injury was sustained is sufficient."

Defendants in their brief urge reliance upon Dr. Rhodes's reference to "a sudden or explosive type of decompression" when there is no evidence of an explosive decompression. But "explosive" was a word adopted by Dr. Rhodes who emphasized that explosive was his word and not the

414

plaintiff's. The plaintiff described the decompression as sudden but makes no suggestion that sudden is synonymous with explosive.

Defendants introduced evidence to the effect that turning the auxiliary bus switch off would not affect the pressurization system. Another witness testified that nothing unusual occurred on the flight to Chicago. Evidence of this nature does not gainsay the adequate evidential support for the findings of the jury on negligence and causation.

Defendants' Proposition II:

"Although the plaintiff introduced evidence as to the specific issues of negligence pled in his petition, the Trial Court, contrary to the established law of this jurisdiction, instructed the doctrine of 'res ipsa loquitur' and permitted the jury to apply that doctrine in reaching their verdict. That the error of the court in so instructing the jury was prejudicial to the rights of these defendants."

■ As we have indicated plaintiff plead application of res ipsa loquitur and as an additional basis for his recovery plead the specific act of co-pilot Sikkink in negligently and carelessly striking an inverter switch in the aircraft cabin that turned off the regular internal power supply and that such action caused a sudden or instantaneous decompression and change in the interior pressurization system simulating the effect of an immediate and drastic increase in altitude. Plaintiff introduced evidence to support this charge. The trial court, over the objection of defendants, gave his instruction No. 11 on the doctrine of res ipsa loquitur and its application. Defendants excepted to instruction No. 11 with others.

Defendants in support of Proposition II rely upon Furr v. McGrath, Okl., 340 P. 2d 243; St. John's Hospital & School of Nursing v. Chapman, Okl., 434 P.2d 160; and Tillery v. Ellison, Okl., 345 P.2d 434. Tillery involved an explosion of nitroglycerin near a well that had been drilled for

the purpose of discovering and producing oil or gas. Plaintiff elected to have the case tried on the theory that the explosion was caused by specific acts of negligence on the part of defendant. In holding the court committed no error in refusing to instruct on res ipsa loquitur, we quoted from Heckfuss v. American Packing Co., Mo. App., 224 S.W. 99:

"The case is taken outside the rule of res ipsa loquitur, where plaintiff assumes the burden of proving the exact and specific acts of negligence causing the injury, and the court submits it on such specific acts, and instructs that plaintiff has the burden to prove all these facts by a preponderance of the evidence."

But here plaintiff plead res ipsa loquitur and alleged additional specific acts of negligence. There were two decompression episodes—one resulting, according to plaintiff's evidence when co-pilot Sikkink bumped the inverter switch—the other during descent. There was no specific allegation covering the latter or its cause and must be deemed to be embraced by the plea of the doctrine of res ipsa loquitur.

The trial court's instruction on res ipsa loquitur was proper under our holding in Guilford v. Foster & Davis, 131 Okl. 148, 268 P. 299. There the action was for wrongful death caused by ignition of gasoline fumes while the deceased, Mrs. Guilford, was in defendant's gasoline plant. Gasoline fumes were negligently permitted to escape by an employee of Foster & Davis, but how the ignition or explosion occurred was not known and not alleged. We held res ipsa loquitur could properly apply to that latter aspect of the case. We said:

"* * * If a part of plaintiffs' case be based upon specific acts of negligence, which are known and capable of proof by direct evidence, and a part of their case is such as would come within the rule of res ipsa loquitur, we see no reason why plaintiffs should be deprived of the benefit of the rule as to the latter part by pleading specific acts of negligence as to the first part."

See also Ramsey Oil Co. v. Dunbar, 172 Okl. 571, 46 P.2d 535.

 Defendants next assert their Proposition III: The verdict in the instant case is so excessive by the evidence introduced in the trial that it is obvious the same was rendered as the result of passion and prejudice.

The relevant facts are: The plaintiff, a non-practicing member of the bar, lost the hearing of his left ear with disturbing side effects at age 42. Medical science can neither offer nor propose a remedy. His life expectancy at age 42 is 27 years. At the time of his injury, which the jury found to be due to defendant's negligence, plaintiff was supervisor of insurance and taxes for Tuloma Gas Products Company, a subsidiary of Standard of Indiana, at a salary of $14,832.00 per year. He commenced work in 1950 at $275.00 per month. Plaintiff had been employed 18 years with the same or affiliated company and had received salary increases and job promotions at regular intervals. The top salary for plaintiff's job classification was $21,000.00. After plaintiff's injury he was offered and accepted a job with Pan American Petroleum Corporation, a subsidiary of Standard, as a staff accountant that constituted a double demotion to a class ten job which plaintiff had held ten years previously. At the time of the demotion plaintiff's salary decrease was $85.00 per month. Later plaintiff received a salary increase which raised his salary slightly above $14,832.00. The top salary for the staff accountant classification was $16,000.00 compared to $21,000.00 for his former Tax Supervisor classification which had been raised to $26,000.00 at the time of trial.

With Kansas City Southern Ry. Co. v. Norwood, Okl., 367 P.2d 722; Jordan Bus Company v. Garnard, 203 Okl. 623, 225 P.2d 173, and Denco Bus Lines, Inc. v. Hargis, 204 Okl. 339, 229 P.2d 560, as a guide, we conclude and hold, in applying these decisions to the facts set forth above, that the verdict of the jury in this case is not the result of passion and prejudice. In Kansas City Southern we said: "A judgment is excessive only where it is apparent that it was rendered under the influence of bias, passion or prejudice without due deliberation and where it is not supported by proof of detriment." In Jordan Bus Company we said: "We are committed to the rule that in an action for damages for personal injuries the court will not grant a new trial on the ground of excessive damages, unless the amount awarded be so flagrantly outrageous and extravagant as to clearly show that the jury was actuated by passion, partiality, prejudice, or corruption." In Denco Bus Lines, we emphasized: " * * * and we must consider the testimony most favorable to the plaintiff as establishing the facts bearing upon the question of whether or not the amount of the verdict was excessive."

Affirmed.

All Justices concur.