## ALBANY INS. CO. et al. v. HOLBERG et al.

### No. 13557.

Circuit Court of Appeals, Eighth Circuit.

March 1, 1948.

M. Arnold Lyons and Irving H. Green, both of Minneapolis, Minn. (Robins, Davis & Lyons and Irvin E. Schermer, all of Minneapolis, Minn., on the brief), for appellants.

John J. McKasy, of Minneapolis, Minn. (Thompson, Hessian, Fletcher & McKasy, Nichols, Mullin & Farnand, Maurice A. Hessian and D. C. Edwards, all of Minneapolis, Minn., on the brief), for appellees.

Before SANBORN, WOODROUGH, and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellants are insurance companies which paid a personal property loss amounting to $17,944.35 accruing to their insured, Bloom Brothers Company, from a fire and incidental water damage at that company's factory in Minneapolis on July 3, 1942. Under the terms of their contracts with the insured they became subrogated to any rights of the insured against third persons "arising from or connected with" the loss to the extent of the payment, and they brought this action as subrogees of their insured, asserting that the fire resulted from actionable negligence of third persons made defendants, and they sought recovery from defendants for the amount of the payment. They claimed that one Arnold Peter Nelson, named as a defendant, caused the fire to be ignited and the loss to be inflicted by his negligence while he was engaged in the work of cleaning up a floor in the building whereby he became liable for the damage to the amount of their payment which amount was due and owing to them from Nelson, and that one Clarence T. Holberg, like-wise joined as a defendant (individually and doing business under several stated firm names), was also liable for and indebted to them to the extent of their payment on account of Nelson's tort and the resulting damage under the doctrine of respondeat superior, in that, as they claimed, Nelson was at the time Holberg's servant engaged in doing for Holberg the work of cleaning up the factory building which Holberg had contracted with Bloom Brothers to perform in a careful, prudent and workmanlike manner. The prayer of the complaint was for judgment against said defendants Nelson and Holberg and each of them for the sum of $17,944.35 and costs.

Defendant Nelson, in his separate answer, denied that the starting of the fire or damage resulting from the fire was due to carelessness, negligence or want of due care on his part, and alleged that the fire was caused and the damage resulted by reason of negligence and want of due care of Bloom Brothers Company. Holberg, in his separate answer, denied on information and belief that negligence of Nelson caused the fire and denied that he was responsible for any negligence of Nelson. He alleged that: "this answering defendant and Bloom Brothers Company entered into an agreement by the terms of which this defendant agreed to furnish to Bloom Brothers Company certain workers that were then and there in his employ and to furnish equipment in connection with the cleaning of windows, walls, cleaning and sanding of floors in a building occupied by Bloom Brothers and * * * it was further mutually agreed * * * that Bloom Brothers Company would exercise and assume exclusive supervision, direction and control of said workers; that this defendant was under non responsibility to supervise, direct or control the workers or their conduct thereof or the work to be done by them or the manner in which said work was performed. That pursuant to said agreement this defendant did furnish to the said Bloom Brothers Company workers as called for by the said Bloom Brothers Company and the equipment and supplies to be used by said workers in and about the work to be done on the premises of Bloom Brothers Company as aforesaid.

That all of said workers reported to the said Bloom Brothers Company and pursuant to the aforesaid agreement worked under the exclusive supervision, direction and control of the Bloom Brothers Company."

Also "this defendant at no time during the course of such employment by Bloom Brothers Company exercised or attempted to exercise any control or direction or supervision in any manner over said employees in said employment by Bloom Brothers Company. That the sole obligation assumed by this defendant under said agreement was to furnish to the said Bloom Brothers Company workers and equipment which obligation was fulfilled."

He did not allege contributory negligence on the part of Bloom Brothers.

After jury trial, a general verdict was returned in favor of both defendants and judgment dismissing plaintiffs' case was entered thereon.

On this appeal by the insurance companies they contend that the court erred in denying their motion, made at the conclusion of the evidence, to direct a verdict against the defendant Nelson "because it was established as a matter of law that he was guilty of negligence which proximately caused the fire." They also complain of the instruction given by the court submitting to the jury the issue of contributory negligence of Bloom Brothers Company as follows: "If you should find that Bloom Brothers was guilty of some act of negligence that proximately contributed to the cause of the fire and resulting damage then plaintiffs should not recover."

They contend that the evidence established as a matter of law that Nelson was acting as the servant of Holberg at the time when, as they contend, he negligently started the fire and caused the damage; that Nelson's negligence was attributable to Holberg and rendered him liable, and that the court erred in denying their motion which they made at the conclusion of the evidence for directed verdict against both Nelson and Holberg.

It appears that Bloom Brothers Company, whose property had been insured by appellants, was engaged in the business of manufacturing souvenirs and novelties, carrying on its operations in a four-story brick and wood building in Minneapolis, 250 feet in length by 150 feet in width. The offices and shipping room were on the first floor, the stock room, air-brush department and painting department were on the second floor where a spray gun was used to apply paint. The fire started on the third floor in a room about 120 feet long by 70 feet wide, where leather goods were assembled and "screening" (a process of superimposing painted designs on materials by forcing paint with a squeegee through a screen containing the design), was carried on. The floor of this room was in a highly inflammable condition because of the accumulations over the course of about four years since last cleaning up of paint and constituent substances on the floor resulting from the spilling over or overflow of paint from the benches on which the screening was done. The type of paint nearly always used had a high linseed oil and turpentine content and the thinners and liquids used to mix the paint were highly inflammable. The accumulations of paint on the floor did not cover all of the floor, but were in uneven mounds of different thickness, tapering down to bare places. They had formed a gummy substance with a crusted surface and were never entirely dry since they contained quantities of oil and the gummy substances beneath the top crusts were also highly volatile.

Immediately before the fire the defendant Nelson was engaged in the work of removing the accumulated materials from the floors of the screening room, working on an area of the floor approximately twelve by six or eight feet in size where the accumulations ran from $\frac{1}{4}$ inch to five or six inches in depth. His testimony was that while he was so at work he lighted a cigarette with a wooden safety match which he shook several times and then threw down to the side, not back of him but "more towards my right side" and "not in an area where this paint area was." The fire started without explosion but very suddenly and almost immediately progressed beyond control, though he attempted unsuccessfully to stamp it out. No one else

was smoking in the room at the time and the evidence is clear that defendant Nelson in lighting his cigarette with the match and throwing the match down beside him caused the fire and the loss resulting from the fire and water damage for which the insurance companies had to pay their insured.

■ But their action against Nelson was not based on any charge of intentional or wilful wrong done by him. It was rested (as it had to be ·in order to include his alleged employer) solely on the ground that he was guilty of actionable negligence in the course of his work proximately causing damage to Bloom Brothers and fixing liability for such damage upon him. Their contention that the evidence concerning Nelson's conduct proximately causing the fire and loss proved such asserted negligence against him beyond the point at which reasonable minds could differ, and therefore established that element of the case as a matter of law to be declared by the court, is concededly impressive, but fundamentally the determination of fact issues is the function of the jury and the court may not take it over except in the clearest cases. Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140. Here the plaintiffs did not request a separate finding by the jury upon the abstract question of whether or not Nelson was negligent, and none was made, but the issues as to negligence charged against Nelson and contributory negligence which Nelson charged against Bloom Brothers were both submitted to the jury. In addition to the instruction as to the effect of contributory negligence of Bloom Brothers, above set forth, the court instructed: "If you find that Bloom Brothers Company was free from negligence and that the defendant, Arnold Peter Nelson, was negligent at the time and place in question and that such negligence was a direct and proximate cause of damage to Bloom Brothers Company and for which plaintiffs were required to respond in damages, then your verdict should be in favor of the plaintiffs and against the defandant, Arnold Peter Nelson."

The response of the jury under those instructions covering Nelson's negligence

and Bloom Brothers' contributory negligence was the general verdict in Nelson's favor.

The main bulk of testimony in the record is directed to the circumstances and conditions of Nelson's employment which tend to throw light on the question of whose servant, whether Holberg's or Bloom Brothers', he should be deemed to be at the time of the fire. But the issue as to Bloom Brothers' contributory negligence presented a distinct question under Nelson's pleading and the evidence, irrespective of whose servant Nelson was at that time. As developed in the evidence (though not reduced to particulars in the pleading) Nelson's charge of negligence against Bloom Brothers Company was that it had failed to inform or warn him of latent conditions of danger existing on its premises, well known to it and not known to him nor observable in the exercise of ordinary care by him, and that such negligence contributed to the fire and loss sustained by Bloom Brothers. Nelson requested the court to instruct that it was the duty of an occupant of premises to give warning to invitees thereon in the occupant's interest, of the existence of latent dangers, and although the court did not comply specifically, its submission of the question of Bloom Brothers' contributory negligence appears to have been responsive to Nelson's pleading and to that request.

■ Relative to the issue of the alleged contributory negligence, there was substantial evidence to the effect: that Nelson was a young man of twenty one years who had worked for four years at floor sanding. His experience was that of a floor sanding machine operator and he was in the general employ of Holberg in the floor sanding division of Holberg's business. On the day of the fire his father, who was associated in the business with Holberg, took him and another floor sander to the plant at about 11 o'clock in the morning and introduced Nelson to a Mr. Atlas and told him in the presence of Mr. Atlas that he would take orders from Mr. Atlas and that Mr. Atlas would tell him what to do. The plant was closed down for a week for the cleaning up work which had to be and was done in the plant at intervals and Mr. Atlas

was acting for Bloom Brothers in getting the work done. He was in charge of the novelty department, had been fourteen years with the company and was fully informed of the conditions in the plant and was admittedly the one who made the agreement with Holberg and who pointed out the work to the men sent by Holberg on a time and material basis and directed them just where to carry on. (Whether he went beyond that in supervising or directing them or had agreed to do so was sharply disputed. It is not disputed that Holberg sent no one to supervise them and no one else assumed to do so.) The time to get the work done was limited to the week the plant was shut down and the agreement Atlas made with Holberg with regard to the use of the men was that he (Atlas) would "do just the parts [of the cleaning up] I have to do." After Nelson had been working with another workman in a large room on the third floor for about an hour, Mr. Atlas directed them to the work to be done on the floor where the fire occurred. Nelson asked Mr. Atlas for another hammer and chisel to use on that room and Mr. Atlas told him to see one of Bloom Brothers' men named Ed and get a crow bar. Mr. Atlas said "that is what they used last time." Mr. Atlas directed Nelson's attention to the accumulation of waste materials on the floor where the fire occurred and was fully informed as to the consistency of the accumulated matter and its highly inflammable character and had worked at that point himself. He knew that the material underneath the encrustation was especially inflammable and that there was great danger at that point in the presence of fire. He testified that when he knew that Nelson was going to work there he gave Nelson very explicit instructions about not smoking. Nelson did not impress him as a fellow "that you wouldn't have to tell that to." Also that "I knew that when anybody came into that room, if he were experienced or not, he was going to have to mind what he was doing." On the other hand, there was evidence that it was common practice for men in this line of work to smoke while on the job, neither Nelson nor his fellow workman saw any no smoking signs in the room in question and Nelson said that he was smoking a cigarette at the time when he was talking to Mr. Atlas and inquired of Mr. Atlas about additional tools and that he had smoked in the area where the fire occurred for some time prior to the fire. He had been in the building only a few hours all told when the fire occurred. He testified that he was not cautioned about danger of smoking. His testimony was in direct conflict with that of Mr. Atlas and other witnesses for plaintiffs on this important point. He knew that paint in general is inflammable, but said, "I wasn't sure about that paint," and encrusted as it was on the outside, his testimony was not incredible. There was no evidence to show that Nelson had had experience or made observations from which he actually knew of the extreme fire hazard at the place where he was working. Nelson's counsel argued to the jury in Nelson's defense that Mr. Atlas' own testimony showed that Mr. Atlas fully appreciated that Nelson ought to be warned of the danger of the place in respect to fire and the argument was justified. Whether such warning was given was of course for the jury in view of the conflict of testimony on the point.

We think in response to the case against Nelson that the court properly submitted the questions of Nelson's negligence and of Bloom Brothers' contributory negligence and of Nelson's liability, to the jury. In doing so it gave the jury forms of verdict for them to fill out or to omit filling out. In one of the forms the finding was "for the plaintiffs assessing their damages at the sum of $17,944.35 as against the defendant Arnold Peter Nelson." In another, which the jury adopted, the finding was "for the defendants." A proposed form of verdict which would have found for the defendant Nelson alone was withheld from the jury by agreement of parties because it was apparent the parties were agreed and the court had instructed that liability on the part of Holberg was dependent upon liability being first established against Nelson.

But appellants contend that there was prejudicial error in the submission

to the jury of their case against Nelson in that the court of its own motion gave the following instruction: "If he [Nelson] was the servant or employee of Bloom Brothers Company, that ends the case and your verdict should be for the defendants," to which exception was taken as follows: "Now the court said that if Nelson was an employee of Bloom Brothers, that that ends the case and a verdict should be returned for the defendant. I just wanted to note that exception to the court's charge." Opposing counsel objected to having the instruction changed and the direction was given. Although it is a single brief sentence, it is summary and adapted to impress itself on the jury's attention and to control its action. The instruction was an erroneous statement of the law applicable to the plaintiffs' case against the defendant Nelson on elementary principles. If in view of all the surrounding circumstances Nelson was negligent and his negligence caused damage to the property of Bloom Brothers, the law accorded Bloom Brothers an action in tort for such damage against Nelson regardless of who employed him, and it can only be inferred that the giving of the instruction in that form was inadvertent. But it results from the presence of this erroneous instruction among those given to the jury that the verdict in favor of Nelson cannot be sustained. It is impossible on account of the instruction to determine from the record whether the jury acquitted Nelson of liability because it believed he had not been guilty of the negligence causing damage charged against him, or because it believed that he was excused from liability by reason of his being at the time in the employ of Bloom Brothers. The plaintiffs in the action are entitled to jury determination of the charge of negligence causing them damage, asserted in their complaint against Nelson, and the case must therefore be reversed and remanded for new trial against Nelson.

The accused instruction did, however, correctly state the law to be applied by the jury to the case against the defendant Holberg. As to Holberg, the burden was upon the plaintiffs to prove that Nelson was working in the employ of Holberg when the fire started and if he was then, in the language of the court, "the servant or employee of Bloom Brothers Company", then the court's expression "that ends the case" was entirely appropriate in respect to the case against Holberg. It was in accord with plaintiffs' pleading and the doctrine of respondeat superior which they invoked and relied on. The error affected only the cause of action asserted against the defendant Nelson.[1]

On consideration of the pleadings and evidence, it is concluded that the issue as to whose servant or employee Nelson was at the time of the fire was properly submitted to the jury. Though the testimony was sharply conflicting, there was substantial evidence to support the allegations of Holberg's answer above set forth. There was credible testimony to be passed on by the jury to the effect that Holberg did no more than furnish workers, including Nelson, who reported to Bloom Brothers Company and pursuant to the agreement between Holberg and Bloom Brothers worked under the exclusive supervision, direction and control of Bloom Brothers.

The appellants charge that the trial court undeservedly rebuked their counsel and wrongfully interfered with the conduct of their case so as to present reversible error, but the contention is without merit. Nelson and other workmen in the factory had been questioned extensively by fire department officers, investigators and attorneys on different occasions and what was said was reduced to writing, the transcripts being in the possession of counsel for plaintiffs. They used them in cross-examination of witnesses, particularly of defendant Nelson whom they called as a witness "for cross-examination under the statute", but indicated their intention not to offer the transcripts in evidence or to exhibit them to opposing counsel. The court specifically instructed the jury that the plaintiffs had that right and refused to require production of the documents. It appeared to the court in the course of the taking of testimony that the plaintiffs' use of the with-

---

[1] See May Dept. Stores v. Bell, 8 Cir., 61 F.2d 830, 842, 843; McCarthy v. Wynne, 10 Cir., 126 F.2d 620, 623.

held documents especially during "cross-examination of Nelson under the statute" was causing confusion as to the purport of what was being elicited and delay in bringing out plaintiffs' proof, and the court, with no other apparent intention than to relieve the confusion and help the trial forward, made the suggestion that the document evidently being read from by examining counsel be produced and that he thought if he were in counsel's place he would produce it. But the right of the plaintiffs in the matter was fully recognized and impressed upon the jury and there was neither the slightest coercion nor any rebuke of counsel expressed or implied. That counsel brought out from the witnesses everything in the withheld documents that they wanted to show is demonstrated by the fact that they never had to and did not call to the stand any of the scriveners of, or witnesses to the documents. Appellants admit in their brief that the trial court's remarks were undoubtedly meant to be helpful and the cases cited by them in which erroneous action of the court tended to create hostility towards counsel have no application.

As no error has been found in the judgment in favor of Holberg, it is affirmed.

Reversed and remanded for new trial against defendant Nelson.