## NATIONAL SURETY CORPORATION v. TODD COUNTY DAIRY COOPERATIVE.

130 N. W. (2d) 511.

September 18, 1964—No. 38,971.

*O. C. Adamson II* and *Ross M. Brown*, for appellant.
*Rosengren, Rufer, Blatti, Hefte & Pemberton*, for respondent.

ROGOSHESKE, JUSTICE.

Plaintiff paid the North Star Dairy for loss of personal property by fire and brought this action against defendant to recover the amount so paid. At the time of the loss, the property was stored in defendant's warehouse under a bailment for hire. There was a verdict for defendant and the court denied plaintiff's motion for judgment notwithstanding the verdict. Plaintiff appeals from the judgment subsequently entered.

Although differently stated by the parties, the question presented is whether the evidence sustains the jury's finding that the fire and resulting loss were not caused by defendant's negligence.

The North Star Dairy stored a large quantity of miscellaneous personal property in defendant's warehouse, for which it paid defend-

ant $100 a month. On March 17, 1961, a fire totally destroyed the warehouse and its contents. Under its fire insurance policy plaintiff paid the North Star Dairy $60,011.37 for the loss. At trial the parties stipulated that the amount paid by plaintiff represented the reasonable value of the property and that the loss occurred while the property was in the possession of defendant as a bailee for hire.

As disclosed by the complaint, plaintiff's theory of liability was predicated on negligence. Since it was undisputed that the fire caused the loss, the testimony narrowed the issues to whether defendant was negligent in igniting and controlling the fire. These issues were submitted to the jury upon general instructions.[1] Contrary to plaintiff's claim, asserted here for the first time, the issue of whether defendant was negligent in failing to make any effort to rescue the bailed goods was not litigated. The testimony does not suggest this as an issue, and plaintiff did not assign defendant's failure to negative this possible claim of negligence as error in its post-trial motion.

The fire started in a quonset-type structure constructed of concrete-block side walls 3 feet high on which rested a roof of corrugated steel. The roof was insulated by the application of asphalt tar mixed with paper. Attached to the roof by metal or wood stripping were large sheets of ¾-inch pressed wood. This construction left an air space between the ceiling and the metal roof. The floor was of concrete. There were large sliding doors, 14 feet high, at each end of the building to permit the entry and exit of large trucks. In one corner of the building there was a place for the storage of unused equipment. Above this area there was a balcony used for storing supplies. Four feet to the north of the garage was an identically constructed quonset in which plaintiff's subrogor's property was stored.

---

[1]Plaintiff's motion for a directed verdict and its request that the court "give the res ipsa loquitur doctrine" were denied. Contrary to defendant's requested instruction and over its objection the court granted plaintiff's motion to withdraw defendant's claim that the negligence of defendant's employee in igniting the fire, if established, was insulated by a "superseding, intervening, efficient cause" in the fire department's failure to control the fire.

Throughout the trial the parties were in agreement that the Minnesota law of bailments requires the bailee to prove that his failure to return the bailed property was not occasioned by his negligence. As stated in Zanker v. Cedar Flying Service, Inc. 214 Minn. 242, 244, 7 N. W. (2d) 775, 776:

"For some years the rule has been well established in this state that when a plaintiff has proven a bailment the defendant has the burden of establishing before the jury that defendant's negligence did not cause the loss of the property bailed. This is not merely the burden of going forward with the proof but the burden of establishing due care on his part by a preponderance of the evidence."

Accord, Davis v. Tribune Job-Printing Co. 70 Minn. 95, 72 N. W. 808; Central Mutual Ins. Co. v. Whetstone, 249 Minn. 334, 81 N. W. (2d) 849. See, also, Johnson v. Smith, 54 Minn. 319, 56 N. W. 37.[2]

In reviewing the record we accept the evidence and all reasonable

---

[2]We accept this as the law of the case, but note that this case points up certain difficulties in applying the concept of the burden of proof to affirmatively establish the exercise of due care. The bailor claims the bailee was negligent. If the evidence is in equilibrium, it can be said that the bailee failed to sustain his burden of proof. His liability nevertheless must be based on negligence, otherwise it would appear that the bailee's liability is in effect that of an insurer. This result would be contrary to our holding in Dennis v. Coleman's Parking & Greasing Stations, Inc. 211 Minn. 597, 2 N. W. (2d) 33.

Because of the problems presented by a rule that requires a bailee to prove that a loss of the bailed goods was not the result of his negligence, most jurisdictions have a different rule on the burden of proof in actions to recover for the loss of bailed goods. In those jurisdictions the bailor by proving the nonreturn of his goods creates a prima facie case of negligence against the bailee. As soon as the bailee offers proof that the goods were destroyed by fire or some other cause which of itself would not support an inference of negligence, the bailee has rebutted the prima facie case. The bailor must then both go forward with the evidence and bear the ultimate burden of persuading the jury that the bailee was negligent. See, Annotations, 9 A. L. R. 559, 71 A. L. R. 767, and 151 A. L. R. 716. See generally, Brodkey, *Practical Aspects of Bailment Proof*, 45 Marquette L. Rev. 531; 8 C. J. S., Bailments, § 50.

inferences therefrom in the light most favorable to the party who prevailed below. Fulsom v. Egner, 248 Minn. 156, 79 N. W. (2d) 25.

The specific acts of defendant's employees suggested by the evidence to have resulted in starting the fire involve overfilling the gas tanks of the Ford truck that eventually caught fire and the failure to control sparks emitted from the operation of an acetylene torch. Plaintiff also claimed negligence in defendant's control of the fire in that it used ineffective measures to attempt to extinguish the fire and it failed to report to firemen a shooting flame of gas that went up to the quonset's ceiling and eventually set the entire garage afire.

The record clearly discloses that the fire started when sparks emitted from an acetylene torch being used by defendant's employee Kilanowski on the right front of the Ford truck came in contact with and ignited gasoline that had overflowed from the truck's left saddle tank onto the garage floor due to the higher temperature within the garage. Kilanowski attempted unsuccessfully to extinguish the fire and then went for help. He found three of defendant's employees nearby, and one of them called the fire department while the others returned to the garage with him. They continued to attempt to extinguish the fire for 5 or 10 minutes until the fire department arrived. The fire was quickly extinguished by the firemen. It had not spread from beneath the saddle tank of the truck from which the gasoline overflowed. Shortly before the fire department arrived a canvas tarp which had been placed over the saddle tank in an effort to smother the fire was removed. At that time three of defendant's employees saw a stream of gas shoot up which was ignited as it passed through the fire. It probably came from the vent of one of the tanks and went up to the ceiling. Sparks also reached the parts room, but it appeared to burn only momentarily. The Ford truck was removed from the garage after the fire was extinguished. About 15 or 20 minutes later one of the defendant's employees noticed a small red-hot smoldering spot on the ceiling in the area where the jet of gas had been observed to strike. He called the fire department's attention to it, and a fireman pulled down a part of one of the pressed wood panels, revealing a large fire in the ceiling. The fire rapidly spread out of control, and within 2 hours the

garage and the quonset in which plaintiff's goods were stored were destroyed.

Plaintiff claims a person using due care would have left sufficient space in the truck's saddle tank for expanding gasoline. Richard Barthel, defendant's employee who filled the tanks, admitted he had been warned by defendant of the expansion propensity of gasoline and knew that this truck was to be inside the garage for some time for a grease job. He testified that, although he did not know that any work with an acetylene torch was to be done on this truck, he examined the level in the left tank and believed it to be about 3 or 4 inches from the top.

Plaintiff claims that defendant's employee, Leo Kilanowski, was negligent in the use of an acetylene torch by failing to use baffles or barriers to control the flying sparks, by failing to moisten the garage floor, and by failing to carefully examine the area around the truck before commencing use of the cutting torch within 4 feet of the left saddle tank. The record discloses that Kilanowski kept the garage floor free of oil and grease and that he walked past the saddle tank from which gasoline eventually overflowed but failed to smell it. He testified that it might be wise to wet the floor, but that would mean he would have to work in a wet area; that he realized the sparks can fly 20 to 30 feet; that he was never told to use a baffle plate; and that he made no particular inspection for spilled gas before beginning to use the torch.

Plaintiff's claim that defendant's employees were negligent in their efforts to extinguish the fire prior to arrival of the fire department is based upon the testimony that defendant's employees used certain fire extinguishers when others nearby were larger and probably would have been more effective and that they employed various other ineffective methods to extinguish the fire on and about the truck.

Plaintiff also claims that defendant's employees negligently allowed the fire to become uncontrolled by failing to report to the fire department the shooting stream of flaming gas that went from the saddle tank to the ceiling. Although the parties are in dispute as to what point in time this shooting jet of flaming gas occurred, we think the record

quite clearly discloses that it was just before the firemen had entered the garage.

With only slight exception, the facts upon which this case must be decided are without dispute. The difficulty herein arises when one attempts to draw inferences and conclusions from the facts. The question for the jury was simply whether on these facts defendant's conduct was consonant with due care. It was the jury's responsibility to determine the particular standard of what constituted due care under the conditions before and during the fire.

In regard to the jury's task of framing a particularized standard, it has been said (Prosser, Torts [2 ed.] § 39, p. 193):

"Since it is impossible to prescribe definite rules in advance for every combination of circumstances which may arise, the details of the standard must be filled in in each particular case. The question then is what the reasonable man would have done under the circumstances. Under our system of procedure, this question is to be determined in all doubtful cases by the jury, * * *."

In Camenker v. Greene, 251 Minn. 106, 109, 86 N. W. (2d) 708, 711, we stated:

"* * * Even though there is a sharp conflict in testimony as to the meaning to be assigned to the evidentiary facts, and most of those facts are here undisputed, the conflict is to be resolved by the trier of fact whenever different minds might reasonably differ as to the conclusions to be drawn from them."

The evidence would support a number of different inferences and conclusions in regard to defendant's exercise of due care in starting and controlling the fire. This being so, reasonable men could differ in arriving at a decision, and thus we cannot disturb the verdict herein. We are not prepared to say upon this record that any act or omission of the defendant constituted a lack of due care as a matter of law. Therefore, the judgment must be affirmed.

Affirmed.