Loyd G. STURM, Administrator of the Estate of Patricia McElmurray Sturm, deceased, Plaintiff in Error,

v.

Dr. James L. GREEN, Defendant in Error.

No. 40638.

Supreme Court of Oklahoma.

Jan. 26, 1965.

Foliart, Shepherd & McPherren, Oklahoma City, for defendant in error.

BERRY, Justice.

Patricia Sturm died July 27, 1961, following delivery of a dead fetus and surgical procedures undergone on July 26, 1961. Plaintiff brought this action in his representative capacity to recover damages for the alleged wrongful death and conscious pain and suffering of his said deceased wife.

The third amended petition charged that her death was proximately caused, or contributed to, by the gross negligence, malpractice, lack of learning, skill, care and diligence of defendant, and other physicians not involved directly in this appeal. The petition specifically charged defendant with negligence in:

(1) Failure to possess the required degree of learning, skill or experience in treating and caring for deceased's pregnancy; or if possessed then failure to use or manifest same;

(2) Abandonment of deceased by absence on vacation during the crucial period of pregnancy after undertaking to care for her until termination thereof;

(3) Failure to check deceased adequately during pregnancy to determine whether she suffered blood abnormalities requiring correction before delivery;

(4) Failure to arrange for a competent doctor to care for deceased while defendant was to be away;

(5) Failure to use common medical knowledge, available tests and reasonable diligence, skill and care in determining that the fibrinogen content of deceased's blood was running low, and in doing nothing to correct this situation;

(6) Failure to use reasonable and proper care and diligence under all the circumstances.

At the close of plaintiff's evidence in chief the trial court sustained a separate demurrer to the evidence and dismissed the cause as to this defendant. The court stated plaintiff's evidence had failed to establish any negligence which could have been the proximate cause of deceased's death and, likewise, wholly failed to establish a cause of action against defendant upon any ground.

Plaintiff and deceased, who was 26 years old at time of death, had been married in 1951, and had four living children. On December 28, 1960, deceased went to defendant for examination, at which time it was estimated she was in the eleventh week of pregnancy. Her condition progressed normally until May 31, 1961, when deceased advised defendant she no longer felt movement. Upon examination defendant was unable to detect heart tones, but told deceased lack of movement did not positively indicate the baby was dead; attempted reassurance and asked her to return in two weeks. Deceased returned for further examination on June 13th at which time her

blood was checked as being within normal limits, but she was emotionally upset. Defendant made an effort to allay her fears and advised her that delivery would be followed to normal time unless complications arose, except that where the fetus is dead it ordinarily does not go to term; because deceased was upset defendant did not discuss possible complications that might arise but advised she would be watched carefully and in event of trouble she was to call defendant at any time. Defendant saw deceased on June 27th and on July 11th at which times her symptoms were the same. On this date defendant made a blood clotting test. Defendant's office staff was alerted to check deceased if she showed any hemorrhaging or abnormality in blood pressure, urine or weight. There was extensive testimony relative to the component of human blood known as fibrinogen, which is a substance which induces or aids clotting of blood at the site of bleeding. Fibrinogen deficiency may manifest itself by bleeding in various parts of the body, as well as by inability to stop hemorrhaging. Defendant testified there had to be bleeding from some part of the body before need would arise for further blood clotting tests.

When defendant attended deceased on July 11th he again told her he was leaving on vacation and that she would be cared for by another doctor. Deceased returned to defendant's office for checkups on July 18th and 25th, the day before she was admitted to the hospital, and at this time was advised that she would be attended by Dr. First. Plaintiff's testimony was deceased told him about July 1, 1961 that defendant would be away on vacation and had made arrangements for her to be attended by another doctor if anything developed while defendant was away. They did not consult another doctor because deceased did not want to do so.

About 6 a. m. on July 26th deceased told plaintiff she was hemorrhaging. After some preparation they arrived at the hospital where deceased was admitted at 7:35 a. m., having advised the duty nurse that

Dr. First was her doctor. This doctor thereafter undertook deceased's case and at different times reported to plaintiff concerning deceased's condition. Deceased was delivered of the dead fetus and remained in the delivery room under constant medical attention. Later in the morning the doctor requested plaintiff to secure blood donors, as his wife was hemorrhaging. The attending physician advised plaintiff he was calling a surgeon into consultation, and at 12:50 plaintiff gave written authorization for performance of a hysterectomy upon his wife. The operation was performed and deceased was moved to the Intensive Care Unit in the hospital. During and following the surgery deceased was transfused with approximately 8 pints of blood. Plaintiff was allowed to visit his wife briefly each two hours, and when he left the hospital at 4 a. m. the morning of July 27th, deceased seemed better. However, about 7:30 a. m. deceased suffered a slight convulsion and died, but plaintiff did not learn of this until his return to the hospital about 8:30 a. m.

An autopsy was authorized by plaintiff which was performed by a pathologist in Muskogee, Oklahoma, approximately 3 hours following death. The cause of death was certified as pulmonary edema due to post partum hemorrhage. The pathological reports reflected post partum hemorrhage following vaginal hysterectomy. The hemorrhagic diathesis was reported as probable hypofibrinogenemia, presumably due to retention of the dead fetus.

Plaintiff has appealed from the trial court's action sustaining defendant's demurrer to the evidence upon two assignments of error, under which three propositions are urged as grounds for reversal of the trial court's order and judgment.

The first proposition asserts that the trial court erred because there was evidence to establish defendant's negligence prior to deceased's delivery which contributed to her death, in that defendant set in motion a chain of negligent events; and, further, defendant was negligent in failing to select a

competent substitute to attend deceased and thereby became a joint tort feasor.

Summarized the argument is that: the ordinary rules of negligence are applicable to cases of medical malpractice and, because defendant breached the duty owed deceased in several particulars, the breach of duty contributed to the proximate cause of death in this case; since a proximate contributing cause is not required to be the sole cause, defendant should be equally responsible for setting in motion a chain of circumstances which resulted in the ultimate injury although others contributed thereto; having assumed the obligation of caring for deceased during her pregnancy defendant was bound to care for her properly or withdraw from the case, and his failure to run fibrinogen level tests at weekly intervals set in motion a series of negligent acts.

■ We are mindful also of the rule which governs in considering a defendant's demurrer to plaintiff's evidence. The trial court in this case was required to consider as true all the evidence, and reasonable inferences to be drawn therefrom, favorable to plaintiff, while treating as withdrawn any conflicting evidence favorable to defendant.

Examining the evidence in the light of the trial court's determination, we necessarily turn to plaintiff's evidence, which established that deceased knew defendant was leaving on his vacation July 1st, and had arranged for her to be attended by one doctor for her office calls that might be necessary and to be delivered by another. There is no evidence that deceased suffered a fibrinogen deficiency prior to entering the hospital on July 26th, or that tests available in Muskogee prior to that time would have afforded a result different from that disclosed by the blood clotting test administered by defendant on July 13, 1961.

■ We are of the opinion plaintiff's argument above summarized is unsound. Our decided cases defining proximate cause, and requiring causal connection to exist between the alleged acts of negligence and the resultant injury are unvarying in adher-ence to the following rules, announced in Phillips Petroleum Co. v. Robertson, 207 Okl. 80, 247 P.2d 501, cited by defendant:

"2. The proximate cause of any injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnishes a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury.

"3. Where the admitted facts fail to show a causal connection between the acts of negligence and the injury alleged to have resulted therefrom, the existence of proximate cause is a question of law for the trial court.

"4. In an action founded upon the law of negligence when the evidence and any permissive inferences does not show a causal connection between the negligence charged and the injury, or that any asserted negligence was the proximate cause of the injury it is error for the trial court to deny a motion for an instructed verdict for the defendant."

■ The quoted rules also are to be applied in the light of prior decisions which require a degree of foreseeability, as expressed in Syllabus 2 of Oklahoma Nat. Gas Co. v. Courtney, 182 Okl. 582, 79 P.2d 235:

"2. A party guilty of negligence or omission of duty is responsible for all the consequences which a prudent and experienced party, fully acquainted with all the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind."

■ There is no evidence indicating deceased's condition was such as to dictate necessity for ministration of fibrinogen tests

prior to July 13th. Neither is there evidence tending to present the need therefor subsequent to running of the blood clotting test at that time. The evidence and inferences reasonably and logically to be drawn therefrom cannot be said to establish that the consequences of defendant's alleged negligent failure to act would have been considered as reasonably to follow had same been suggested to defendant. The same reasoning was applied in Norman v. Scrivner-Stevens Co., 201 Okl. 218, 204 P.2d 277, relied upon by defendant herein. Also see Midland Valley R. Co. v. Mason, Okl., 372 P.2d 40; Swan v. Davis, Okl., 385 P.2d 436.

Plaintiff further contends defendant was liable for the reason he owed a duty to use ordinary and reasonable care in selection of a substitute under the circumstances of this case. It is asserted the weight of authority establishes the rule that such duty is violated when a physician selects another doctor to handle a potentially dangerous case and knows, or should know, the selectee lacks familiarity with the problems involved. Supporting authority for this claim presumably is found in Stokes v. Long, 52 Mont. 470, 159 P. 28; Nash v. Royster, 189 N.C. 408, 127 S.E. 356; Moore v. Lee, 109 Tex. 391, 211 S.W. 214, 4 A.L.R. 185, and Moulten v. Huckleberry, 150 Or. 538, 46 P.2d 589.

■ Recourse to such authority discloses that without exception, each decision recognized the rule that a physician who, being unable to attend a particular patient, sends a substitute to attend the patient is not liable for the substitute's negligence or malpractice *unless the substitute is acting as an agent in performing such services,* or due care is not exercised in selection. The holding in the Moulton case, supra, resulted purely from the specific finding that the physician guilty of negligence in treating the patient was in the employ of the selecting physician and thereby was an agent for whose negligence the employer was held liable.

In 4 A.L.R. 186, 46 A.L.R. 1454 and 85 A.L.R.2d 889, are collected the decided cases upon the question raised herein. The general rule is that a physician who is unable to care for a patient may send a substitute to care for the patient, and no liability attaches for negligence of the substitute absent agency or negligence in selection of the substitute. 41 Am.Jur., Physicians & Surgeons, Sec. 114; 70 C.J.S. Physicians and Surgeons § 54d. Cases from other courts supporting such rule appear in 85 A.L.R.2d Sec. 7(a), 901.

■ There is no evidence in the present case tending to support plaintiff's argument that defendant failed to use ordinary and reasonable care in selection of a doctor who was to care for deceased during defendant's preannounced absence. Plaintiff's evidence relative to this matter, although treated as withdrawn for purposes of consideration of the demurrer, would tend to establish the contrary of plaintiff's argument.

The second proposition urged is that defendant is liable for the neglect of his hired substitute, and therefore bears responsibility for both his own and the employee's negligence. The plaintiff urges that, although the pleading was not comprehensive, the pleading that defendant was negligent in failing to secure a competent doctor as a substitute and that their negligence combined was sufficient to charge joint liability. Thus plaintiff reasons that if there is any theory upon which plaintiff could recover it was reversible error to sustain a demurrer to plaintiff's evidence.

■ It is axiomatic that existence of agency cannot be presumed. The party who relies upon existence of the relationship is required both to allege and prove the fact of agency and the scope of the agent's authority. These requirements were not met in the present case.

A third contention is made wherein plaintiff claims reversible error arising from the trial court's action in requiring the entire deposition of defendant to be placed in evidence as the basis for plaintiff presenting admissions against interest contained therein. We consider it unnecessary to discuss the question sought to be presented for the

reason same properly is not before us for consideration.

We are of the opinion the trial court was correct in sustaining defendant's demurrer to plaintiff's evidence.

The judgment is affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, JOHNSON, WILLIAMS, BLACKBIRD and IRWIN, JJ., concur.