HARDWARE MUTUAL INSURANCE COMPANY, Appellant,

v.

Robert M. LUKKEN, d/b/a Lukken Steel Construction Company, and Roy Tibbs, Appellees.

No. 8538.

United States Court of Appeals Tenth Circuit.

Jan. 12, 1967.

Richard D. Gibbon, Tulsa, Okl. (Covington, Gibbon & Poe, James E. Poe, Tulsa, Okl., with him on brief), for appellant.

Lee Grigg, Tulsa, Okl. (Houston, Klein & Davidson, Richard T. Sonberg, L. Michael Hager and Ronald Main, Tulsa, Okl., with him on brief), for appellees.

Before MURRAH, Chief Judge, and HILL and HICKEY, Circuit Judges.

MURRAH, Chief Judge.

Appellant Hardware Mutual Insurance Company issued a fire insurance policy on a building located in Tulsa, Oklahoma. A fire occurred, and Hardware as subrogee sued appellees Tibbs and Lukken on the theory that their negligence was the proximate cause of the fire. A jury found for the appellees, and Hardware appeals.

■ ■ Hardware first complains of the court's refusal to direct a verdict or grant judgment n. o. v. in its favor. This means, of course, that Hardware has the heavy burden of convincing us that actionable negligence is the only permissible inference which can be drawn from the established facts. Christopherson v. Humphrey, 10 Cir., 366 F.2d 323. See High Voltage Engineering Corp. v. Pierce, 10 Cir., 359 F.2d 33; United States v. Hess, 10 Cir., 341 F.2d 444; Chicago, Rock Island and Pacific Railroad Co. v. Hugh Breeding, Inc., 10 Cir., 232 F.2d 584; Lussan v. Grain Dealers Mutual Ins. Co., 5 Cir., 280 F.2d 491. The facts were susceptible of more than one inference, and therefore the issue of negligence was for the jury.

The insured building was a corrugated steel Quonset type of structure. One of its doors was damaged when struck by a truck and Lukken contracted to do the repairs. He assigned his employee Tibbs, a welder of 15 years experience, to do the work which consisted of the removal and replacement of a steel door post and adjacent steel wall sections. The interior of the building was insulated with a foil back material which covered the ceiling and came down to some extent on the walls. The foil back was visible through chicken wire used to hold the insulation in place against the steel sections of the roof and walls. Above the damaged door was a piece of plywood which had been nailed to the steel studs and was thus separated from the wall by a space of about three inches. The insulation came down to the top of the plywood, but it is not clear whether it extended into the space between the plywood and the wall. To replace the door post it was necessary for Tibbs to use both a cutting and a welding torch at a point about two inches from the plywood. After the new post was welded into place, smoke was noticed coming from behind the plywood. Tibbs poured a small bucket of water into the space behind it but smoke continued to rise. Upon his helper's return with a second bucket of water Tibbs decided to remove the plywood. He did so. Flames broke out and spread so quickly there was no opportunity to use the second bucket of water. The insulation contained a highly inflammable asphalt adhesive, and the fire spread through the insulation to the rest of the building causing extensive damage to the contents.

Testifying as a recognized expert [1], Tibbs admitted that to determine the hazard of fire a welder should know what materials are used in a building; that he did not inspect the insulation to determine its inflammability; that he did not inspect the area behind the plywood; that the only fire fighting equipment he had at hand was a small bucket of water; and that he did not " * * * give any type warning at all to any representative of the R. C. Cola Company [the lessee of the insured building] as to any possibility of fire". Tibbs also testified, however, that in his experience with insulation of this type he had never seen any of it burn; that there was nothing about this foil back material to indicate it would burn; that in his opin-

---

1. Tibbs was the only witness called by Hardware.

ion as an expert there was no "potential or possible fire hazard" at the work site except some pasteboard boxes which he removed; that in his opinion it was unnecessary to remove the insulation at or near the work site; and that a bucket of water to put out "smudges" and "smolders" is "all you need in welding". Lukken also testified as a recognized expert stating that in his experience working with and around insulation he had never found any that was inflammable, and that there was nothing about the appearance of this foil back material to indicate it was inflammable.

In harmony with the allegations of its complaint Hardware's motion for directed verdict or judgment n. o. v. was based on the admissions of Tibbs which we have detailed to the effect that he did not take certain precautions in the welding operation. This, said Hardware, was negligence as a matter of law. In its post verdict ruling on the motion the trial court took due note of Tibbs' testimony as to "the manner in which the work was performed", but he also observed that " * * * plaintiff did not offer any evidence that other welders under the same circumstances would have performed the work in a different manner or would have taken any other precautions." He concluded that " * * * the jury could have found defendants exercised ordinary care, or the jury could have found under the evidence, that the fire was not foreseeable by a reasonably prudent welder, because of the evidence to the effect that insulation usually does not burn."

On appeal Hardware repeats its argument that the uncontroverted evidence of Tibbs' failure to take the suggested precautions proved negligence as a matter of law.[2] In this connection it seems to argue that the case law establishes a legal standard of care or conduct requiring that the precautions be taken.[3] Putting the case law aside for the moment and looking solely at the facts as detailed, we are unable to say that all reasonable men would conclude that those facts constitute a failure to exercise ordinary care. On the contrary, how a prudent welder would proceed to work in a steel building insulated with a material thought on the basis of years of experience to be non-inflammable seems to us to be eminently a question for the jury. Certainly we do not know how a prudent welder would have proceeded in the same or similar circumstances. Thus, unless the Oklahoma case law can be said to establish a standard of ordinary care requiring welders to take the suggested precautions under all circumstances, the standard of ordinary care was properly for the jury. We proceed to consider the case law.

In the Oklahoma case of Independent-Eastern Torpedo Co. v. Price, 208 Okl. 633, 258 P.2d 189, the question was whether a well-shooter was negligent in relying upon a shot detector to determine if an explosive had detonated when there was a more practical and positive method available, i. e. visual observation. In rejecting the contention that a verdict should have been directed for the defendants and upholding submission of the negligence issue to the jury, the court stated 258 P.2d at page 197 that "Where there is a practical and apparently certain means to determine a result, especially when dealing with a dangerous substance, and it is not used, and injury results from such conduct, the person responsible for such failure is liable." Although in that case the ultimate negligence issue was submitted to the jury, the quoted language, when viewed in the abstract, arguably sets a standard of care

2. At the conclusion of Hardware's case, appellees demurred to the evidence. The demurrer was overruled. It is noteworthy that in his argument on the motion Hardware's attorney stated that "At least it is a jury question as to whether he [Tibbs] took the necessary measures".

and that "I don't think there is any question that we have made two or three very good jury issues in relation to this thing".

3. Hardware does not invoke any statute or ordinance to set the standard of care. It refers only to case law.

applicable to our case. But, we do not think so. It is one thing to establish a legal standard of care in terms of precautions applicable to situations involving known dangers. It is quite a different thing to impose that standard in situations like ours where no danger is known or apparent.

Nor do the cases from other jurisdictions, cited and relied upon by Hardware, support its thesis that the court should have decreed negligence as a matter of law. See Wood v. Becker Welding Shop, et al., La.App., 34 So.2d 924; Reliance Insurance Co. of Philadelphia, Pa. v. Pohlking, 60 Ohio App. 156, 19 N.E.2d 906; Lawrence Warehouse Co. v. Defense Supplies Corp., 9 Cir., 164 F.2d 773; International Mercantile Marine Co. v. W. and A. Fletcher Co., 2 Cir., 296 F. 855; United States v. Todd Engineering Dry Dock and Repair Co., D.C., 53 F.2d 1025. See also Anno. 49 A.L.R.2d 368. The cases do, to be sure, uphold liability for the negligent use of a blowtorch based upon failure to take prudent precautions, but none imposed negligence as a matter of law for failure to take precautions. Indeed, all of the blowtorch cases we have seen hold that the negligence issue is for the jury. See National Surety Corp. v. Todd County Dairy Co-op, 269 Minn. 298, 130 N.W.2d 511; World Fire and Marine Ins. Co. v. Alliance Sandblasting Co., 105 Conn. 640, 136 A. 681; Phoenix Ins. Co. v. Cook, 93 Ohio App. 503, 113 N.E.2d 925; Johnson v. Nicholson, 159 Cal.App.2d 395, 324 P.2d 307; Matthews v. Carpenter, 231 Miss. 677, 97 So.2d 522; Patton v. Dail, 252 N.C. 425, 114 S.E.2d 87. Also see two non-torch fire cases: Albany Ins. Co. et al. v. Holberg, et al., 8 Cir., 166 F.2d 311, involving a match discarded on a paint covered floor; National Lead Co. v. Schuft, 8 Cir., 176 F.2d 610, involving the operation of furnaces in a building filled with coal dust.

Hardware also relies on Restatement Torts 2d § 289, Comment j, to the following effect: *"Recognition of Risk.* It is not necessary that the actor should realize that the circumstances surrounding him are such as to make his conduct likely to cause harm to another. It is enough that he should realize that his perception of the surrounding circumstances is so imperfect that the safety or danger of his act depends upon circumstances which at the moment he neither does nor can perceive. In such case it is negligent for him to act if a reasonable man would recognize the necessity of making further investigation." While Hardware emphasizes the first part of this statement, the test is plainly stated in the latter part. As applied to our case, it is whether a reasonably prudent welder "would recognize the necessity of making further investigation." And, we have already suggested that question is for the jury unless the cited case law dictates otherwise.

Finally, Hardware seeks to invoke res ipsa loquitur which, as recognized and applied in Oklahoma, simply raises a presumption or inference of negligence upon a showing that the accident does not ordinarily occur in the absence of negligence and that the defendant was in control of the instrumentality which caused the accident. See Furr v. McGrath, Okl., 340 P.2d 243; Mohawk Drilling Co. v. McCullough Tool Co., 10 Cir., 271 F.2d 627. In the first place, it is sufficient to say that Hardware did not invoke res ipsa loquitur; as far as this record shows, it did not request an instruction thereon. Nor did it object to the court's instruction that the burden of proof was on Hardware to prove every essential element of its case, and that " * * * the mere proof that a fire occurred * * * as a result of the acts of the defendants and that such fire damaged the contents of the plant carries with it no presumption of negligence." But, even if res ipsa loquitur had been invoked, it would not have dictated a directed verdict of negligence as a matter of law. The weight to be given to the inference raised by res ipsa loquitur is, after all, for the jury. See Furr v. McGrath, supra; Mohawk Drilling Co. v. McCullough Tool Co., supra.

This brings us to Hardware's second ground for reversal, i. e. that the court erred in not granting its motion for a new trial. Reference is first made to the refusal of the court to give certain requested instructions, and to certain other instructions which were given by the court but are said to be erroneously inconsistent. The requested instructions have not been brought forward in the record and they form no basis for review here. See Campbell v. Clark, 10 Cir., 283 F.2d 766. But, even if the purported instructions were in the record, the objection raised below to the court's refusal to give them was not specific enough to support review. The objection was, "Now, we at this time would re-request all of the instructions that we have given to the court and have not been given. We think there are two or three that are important that were left out." This type of objection does not inform the court of the asserted error so as to provide it with an opportunity to make needed corrections, and any error in the failure to give requested instructions is not open to review. See Pittman v. Harvey, 10 Cir., 261 F.2d 44; and see Dunn, etc. et al. v. St. Louis-San Francisco Railway Co., November Term 1966, 10 Cir., 370 F.2d 681. Similarly, no objection at all, not even a general one, was made to the instructions which were given and are said to be erroneously inconsistent. They may not now be assailed.

Hardware did, however, specifically object to the instruction on proximate cause which told the jury, "For an act of negligence to be deemed the 'proximate cause' of an accident such as a fire, the damages sustained as a result thereof must be shown to have been such as could have been reasonably foreseen by a prudent person in the exercise of due care, although it might not have been specifically contemplated or anticipated." As we read, and we can only hope the jury understood, this language, it simply told them that a negligent welder is responsible for all damages which a prudent welder would have foreseen even though the defendant welder did not in fact foresee them. It thus required the jury to find that a negligent prudent welder, if indeed there be such, would have foreseen the damages that actually occurred. The objection below and contention here is that the instruction given was too restrictive in that it did not sufficiently inform the jury that proximate cause requires only foreseeability of fire and not foreseeability of the magnitude of the fire, i. e. foreseeability of some damage, not foreseeability of the damage which actually occurred. Hardware points out that the appellees introduced evidence on the quickness with which the fire spread, and argues it was, therefore, incumbent upon the court to clearly state that foreseeability of the magnitude of the fire was not requisite to a finding of proximate cause.

This contention takes us into a thorny and, we think, confusing area of Oklahoma tort law. See the comprehensive and provocative review of the case law in 19 Okl.L.R. 3, pp. 348–352. We start, of course, with a negligent welder, for the application of proximate cause presupposes negligence. And, we must also proceed on the legal premise, contrary to Palsgraf v. Long Island R.R., 248 N.Y. 339, 162 N.E. 99 [4], 59 A.L.R. 1253, that foreseeability is an essential element of proximate cause. And see Beesley v. United States, 10 Cir., 364 F. 2d 194. It appears that Oklahoma has recognized and applied at least three different tests for determining proximate cause, all based upon some degree of foreseeability. At the risk of oversimplification, we state them as follows: (1) A wrongdoer is responsible for the harm which a prudent man would foresee as likely to result from his wrongful act. See Atchison, T. & S. F. Ry. Co. v. Kennard, 199 Okl. 1, 181 P.2d 234, Cunningham v. Pratt, Okl., 392 P.2d 725; Midland Valley R.R. Co. v. Mason, Okl., 372 P.2d 40. This test may also be called

---

4. See also Green, Rationale of Proximate Cause.

the Wagon Mound test after Overseas Tankship (U.K.), Ltd. v. Morts Dock and Engineering Co., 1 All E.R. 404. (2) A wrongdoer is responsible for all the consequences of his act if a prudent man would foresee that the wrongful act would result in an injury of some sort, however trivial. See Black Gold Petroleum Co. v. Webb, 186 Okl. 384, 99 P.2d 868; McAlester Corp. v. Wheeler, 205 Okl. 446, 239 P.2d 409; Oklahoma Natural Gas Co. v. Harlan, 206 Okl. 413, 243 P.2d 730. This may be said to be patterned on Re Polemis and Furness, Withy & Co. Ltd., All E.R.Rep. 40, 3 K.B. 560, expressly repudiated and overruled in the Wagon Mound case. (3) The third and most recently enunciated test, sometimes called the "hindsight" test, see 19 Okl. L.R. 3, is couched in the following language: "A party guilty of negligence or omission of duty is responsible for all the consequences which a prudent and experienced party, fully acquainted with all the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind." Sturm v. Green, Okl., 398 P.2d 799, 803. As we read these legal words, they seem to say that a wrongdoer is responsible for all the consequences which a prudent man charged with knowledge of all the facts would have thought possible to follow from his negligent act. This third test would seem to obviate foreseeability as an element of proximate cause. Indeed, this view has been embraced with commendable candor and characteristic erudition by the Minnesota court in Dellwo v. Pearson, 259 Minn. 452, 107 N.W.2d 859. In the language of Mr. Justice Loevinger, speaking for a unanimous Minnesota court, "It is enough to say that negligence is tested by foresight but proximate cause is determined by hindsight." As applied to our case, this means that the negligent prudent welder is responsible for all the consequences of the negligent welding act, for being charged with complete knowledge of all the facts, he is surely to be legally presumed to foresee the reasonable possibility of all the consequences of that act.

Application of the hindsight test, or for that matter the Polemis test, would lead us to a reversal, since as we have interpreted the instructions given they told the jury to apply the Wagon Mound test. The difficulty lies in our inability to say with assurance that the Oklahoma court in Sturm v. Green, supra, intended to repudiate foresight as an element of proximate cause or whether it intended to retain foreseeability or some degree of it. As we have seen, both the Wagon Mound test and the Polemis test (tests 1 and 2) find support in respectable authority in Oklahoma and elsewhere. The Oklahoma court in Sturm stated that the rules of proximate cause would be applied " * * * in the light of prior decisions which require a degree of foreseeability as expressed in * * * Oklahoma Nat. Gas Co. v. Courtney, 182 Okl. 582, 79 P.2d 235". The court then proceeded to quote the syllabus which we interpreted as reading upon the hindsight test. But, even so, we do not understand the court to make a clean break with foreseeability as an element of proximate cause. It does not expressly overrule Oklahoma case law supporting the instructions given by the trial court. Until it does so, we are unable to say that the trial court's instruction based on unrepudiated Oklahoma law was clearly erroneous.

Hardware finally complains of the trial court's refusal to permit impeachment of two of appellee's witnesses by cross-examination to show that they had settled claims with the appellees growing out of the fire. In refusing to permit such cross-examination the court stated that " * * * the cases that the court has before it reveals that it would be against the clear rule of authority in the bulk of cases to allow such testimony since the Courts encourage compromise settlements and do not allow such compromises to become evidence in the case." The court also was of the opinion that these witnesses' testimony did not dam-

age Hardware's case. Hardware relies on Anno. 161 A.L.R. 395 and cases cited therein for the proposition that the general rule is to permit cross-examination under these circumstances. See also Hayes v. Coleman, 338 Mich. 371, 61 N.W.2d 634; Mobile City Lines v. Alexander, 249 Ala. 107, 30 So.2d 4; Stevens v. Waldman, Mo.App., 375 S.W.2d 633; Luis v. Cavin, 88 Cal.App.2d 107, 198 P. 2d 563. Appellees appear to concede the point; however, they argue and we agree that for the second reason given by the trial court he was nevertheless well within his discretion in refusing to permit cross-examination to impeach. The testimony of these witnesses did no harm to Hardware[5], and their impeachment would not advance Hardware's cause. We conclude that refusal to permit cross-examination was not prejudicial, certainly not reversibly so.

The judgment is affirmed.

---

5. One of the witnesses was working in the building at the time of the fire. His testimony related to the speed with which the fire spread. The other witness was the president of the corporation leasing the building at the time of the fire. His testimony related to who owned the building, whether he and the owner discussed the inflammability of the insulation prior to the fire, and whether he or the owner retained Lukken to repair the damaged door.